480 P.2d 985

STATE of Arizona, Appellee,

v.

Earl Leon BROOKSHIRE, Appellant.

No. 1895.

Supreme Court of Arizona,
In Division.

Feb. 10, 1971.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Lawrence C. Cantor, Phoenix, for appellant.

LOCKWOOD, Justice.

The defendant was convicted below of first degree burglary (A.R.S. §§ 13–301, 13–302) with a prior conviction, and sen-

tenced to a term of from ten to eleven years in the Arizona State Prison. He appeals, claiming the evidence is insufficient to support a conviction of burglary, as it is based on the testimony of an accomplice.

On appeal, we must take the facts in the light most favorable to sustaining the verdict. State v. Bearden, 99 Ariz. 1, 405 P. 2d 885 (1965). On Monday morning, September 19, 1966 at 7:00 A.M., Richard Best returned to his work as warehouse foreman at Westward Storage and Transfer Company in Phoenix, and discovered that eighteen console color televisions were missing. He had locked up the warehouse at Saturday noon (September 17) by locking the steel rolling doors of the warehouse proper, and by locking the gate to the yard with a chain and padlock. The rolling doors are locked with a steel pin.

The burglary in question occurred in the evening of September 17th. The defendant was a former employee of Westward, and according to the testimony of the accomplice, was the mastermind of the burglary. The accomplice, Ralph Cave, and another accomplice (who did not testify) made the actual entry on the premises. The defendant was prosecuted and convicted as a principal, pursuant to A.R.S. §§ 13-139, 13-140. The charges against Cave were dropped when he entered a plea of guilty to an unrelated armed robbery charge. Both accomplices had formerly worked for Westward.

Cave testified that one week prior to the burglary he, the other accomplice and the defendant had a conversation in the defendant's home in northwest Phoenix concerning the possible theft of some color televisions in the Westward warehouse. One week prior to the burglary, the defendant had participated in an inventory of the color televisions with foreman Best.

The defendant made the initial proposal. They planned to use the defendant's bolt cutters to cut the chain and to pry open the rolling doors enough to slip under and pull out the pin. They also planned to rent a truck.

In the late afternoon of September 17th, the defendant and Cave met and rented a van truck. The deposit money was the defendant's. They had driven to the truck rental business in the defendant's car which Cave testified was a red DeSoto. The two men then parked the truck at the Roadrunner Cafe, and picked up the third man involved in the crime. They killed time at the cafe until about nine o'clock discussing the disposal of the televisions. The three men went to the warehouse but came back to the cafe because a truck was still missing from the yard. At about 9:30 or 10:00, after killing some more time the defendant took his red-handled bolt cutters from his car and gave them to Cave and the other accomplice. The two accomplices returned to the warehouse in the rented truck. They used the defendant's bolt cutters to cut the chain. They pried up the rolling doors, and Cave slipped under and removed the pin. They knew where the televisions were, and went directly to them. It took the two accomplices about one hour and fifteen minutes to load the eighteen color televisions into the truck.

Cave saw the defendant's car drive around the warehouse after he had cut the chain and again while they were loading the televisions. Cave stated that the defendant was their lookout. After Cave and the third man finished loading the truck, they followed the defendant to a side street in Northwest Phoenix where they parked the truck. The defendant drove Cave home at about 10:30 or 11:00.

On Sunday morning Cave and the defendant went to the Arizona Milk Supply in Glendale, where they loaded the sets onto a pickup truck, and unwrapped them. At Arizona Milk Supply, the defendant sold a television to Jewel Dillahanty, who paid $200 for the television less a $50 allowance for her old television. The television was delivered to her that evening. She paid the defendant by a check (which

was introduced into evidence) on Friday. The serial number of her television matched that of one of the televisions missing from Westward. The defendant told her he was selling the televisions for a friend that was going into bankruptcy.

Officer Bill Copeland, of the Phoenix Police investigated the burglary. One month later, Officer Copeland, with a search warrant, based upon information from the second accomplice entered the defendant's home and discovered red-handled bolt cutters hanging on a rack in the defendant's garage. The bolt cutters were introduced in evidence and identified by Cave as being identical to those loaned him by the defendant. A test run on the bolt cutters determined that the chain had been cut by the same type of bolt cutters.

Defendant's daughter testified that her father had been cooperative with the police officers. She testified that her father and the officers had a dispute because the officers would not give him a receipt. (The officer testified that a receipt was standard procedure.) This was the extent of the evidence presented by the defendant, who did not take the stand in his own behalf.

The defendant asserts that the above evidence is not sufficient to sustain a conviction of burglary, though it might be sufficient to convict him of receiving stolen goods.

Section 13–136, A.R.S., reads as follows:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The defendant attacks the sufficiency of the evidence, claiming there was not sufficient corroboration of the accomplice's testimony to meet the requirements of the above statute.

We disagree. Possession of recently stolen property warrants an inference that the possessor was the taker. State v. Jackson, 101 Ariz. 399, 420 P.2d 270 (1966). Such possession is not sufficient in and of itself to warrant conviction. However, in State v. Smith, 96 Ariz. 322, 395 P.2d 362 (1964) we held that possession of recently stolen property was sufficient corroboration of testimony of an accomplice.

In addition to possession of recently stolen property which he sold to Mrs. Dillahanty at a price below market price, the defendant was in possession of burglary tools; he was a former employee of the burglarized warehouse and had participated in an inventory just prior to his leaving his employment. Taken together, these form a matrix of activities which are sufficient to corroborate the accomplice.

The defendant also asserts the trial court erred in admitting the bolt cutters into evidence. We do not agree. Although there was no showing that these bolt cutters were the ones used in the burglary, there was a showing that the same type was used. That the defendant was in possession of these bolt cutters has some probative force, in that it established that the defendant could have perpetrated the crime.

Defendant's last contention is that his trial attorney was so incompetent that he was not afforded his Sixth Amendment right to counsel. This assistance of counsel must of course be effective. Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, "effective representation cannot be equated with successful representation." State v. Bustamante, 103 Ariz. 551, 447 P.2d 243 (1968). See also United States v. Hammonds, 425 F.2d 597 (D.C.App.1970).

Whether a defendant has received effective counsel is a difficult matter to determine, and must be determined on the basis of the entire record and facts in each particular case. United States v. Hammonds, supra.

**24**

Defendant's specific complaints here are first of all that his attorney made an opening statement that was so confusing to the jury that it could only have prejudiced the defendant. While the opening statement may have been somewhat confusing, in and of itself, it did not render counsel's assistance ineffective.

The defendant next contends that as his trial attorney has now been disbarred, he must have been incompetent. His attorney was disbarred for mishandling client's funds, and not for any reason which would affect his representation of the defendant.

■ For a defendant to have been denied effective counsel, his counsel must have been so incompetent to amount to a farce or mockery of justice. Bouchard v. United States, 344 F.2d 872 (9th Cir. 1965); See also State v. Davis, 105 Ariz. 498, 467 P.2d 743 (1970); State v. Hughes, 104 Ariz. 535, 456 P.2d 393 (1969).

■ Defense counsel in this case vigorously cross-examined the prosecution's witnesses. He impeached the accomplice's testimony by his prior convictions, and forcefully demonstrated that the accomplice had a strong interest in testifying the way he did. Defense counsel proposed instructions to the trial judge. He objected to certain questions asked by the prosecutor and to the introduction of certain evidence. Additionally, he made a credible closing statement. He moved for a directed verdict. The defendant does not contend that his counsel failed to consult with him or that he was not advised of his rights.

Looking at the record as a whole, we cannot say that the trial was a farce so as to deny the defendant effective assistance of counsel.

Judgment affirmed.

UDALL and CAMERON, JJ., concur.