560 P.2d 1238
**STATE of Arizona, Appellee,**

v.

**Richard Amine RODRIGUEZ, Appellant.**

No. 3636.

Supreme Court of Arizona,
In Banc.

Feb. 18, 1977.

Struckmeyer, V. C. J., filed dissenting opinion.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Paul J. Prato, Deputy Public Defender, Phoenix, for appellant.

GORDON, Justice:

Appellant, Richard Amine Rodriguez, and co-defendant Keith Edward Cook (not a party to this appeal) were each convicted of burglary, second degree, in violation of A.R.S. § 13–302, involving a dwelling in Tempe, Arizona. This conviction served as the basis for the revocation of two separate and unrelated suspended sentences and probations for drug felony charges that were then pending against appellant. He was sentenced to not less than four and not more than five years in prison on the burglary charge and the same sentence on each revoked probation, with all three sentences to run concurrently. The revocations of the suspended sentences are not involved in this appeal.

We have assumed jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, Rule 47(e). The only question urged by appellant on appeal is whether the instructions given permitted the jury to presume that the specific intent to commit theft or a felony existed in appellant's mind when he entered the dwelling. We find that they did not and affirm appellant's conviction for burglary, second degree.

A few days prior to July 30, 1975 Dr. Federis and his family had locked up their home at 1818 Main Street, Tempe, Arizona and left for a vacation. (We are using a fictitious street name.) Neighbors, Clarence and Lugenia Vorwerk agreed to keep an eye on the Federis' home. In the mid-morning of July 30, 1975 Lugenia Vorwerk, looking out her bedroom window, saw appellant and Cook drive up into the Federis' driveway, ring the doorbell, and after no one answered go around into the backyard. As she did not know appellant or his companion, Mrs. Vorwerk called the police. Rodriguez and Cook apparently gained entry into the home by manipulating the lock in the sliding glass arcadia door in the back of the dwelling and were arrested in the family room of the house shortly thereafter. When Rodriguez and Cook were arrested, dresser drawers, closet doors, cabinets throughout the house were standing open and a cassette tape recorder with AM and FM radio, calculator and an AC electrical adaptor were found in the shower stall in the bathroom off the master bedroom. An earring, similar to one found on the floor of the bedroom was found in appellant's pocket. Rodriguez and Cook's explanation for their presence in the dwelling was that Rodriguez had driven Cook to this house thinking it was the home of one Ken Adams, Cook's friend, whom Cook wanted to ask for a ride to the Arizona State University Campus, where he and Adams worked. (Adams' home was later determined to be located at 1858 Main Street, about 150 yards away.) In a later statement, appellant admitted that once Cook had told him they were in the wrong house, he then decided to "check the place out." It is appellant's contention that there being no proof that the intent to commit theft exist-

ed in appellant's mind at the time of his entry into the dwelling, but was conceived later, the crime of burglary had not been proven.

■ Undoubtedly an instruction to the jury, without more, that would permit the jury to presume an essential element of the crime would be prejudicial and reversible error.

"A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime." *Morissette v. United States*, 342 U.S. 246, 275, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952) (footnote omitted).

In this case, over appellant's objection, the Court gave a general intent instruction as follows:

"The state must prove that the defendant has done an act which is forbidden by law and that he intended to do it. You may determine that the defendant intended to do the act if he did it voluntarily. The state does not have to prove that the defendant knew the act was forbidden by law." R.A.J.I. Criminal Standard Number 4.

If this instruction were the only one given, the jury might have been led to believe that having voluntarily entered a dwelling, appellant's concurrent intention to commit theft therein could be presumed. But in addition to the foregoing instruction, the Court, after five other general instructions, properly instructed the jury on the elements of burglary as follows:

"Burglary has two elements: (1) There must be an entry into a dwelling; and (2) The entry must be with the intent to commit a felony or theft.

"The defendant does not have to actually commit a felony or theft. If committing a felony or theft was the defendant's reason for entry, the burglary is complete on entry. If you determine that the defendant entered, it is your duty to determine his reason for entering." R.A.J.I. Crimes Number 12.

■ Appellant urges that we adopt the rule announced by California in *People v. Snyder*, 15 Cal.2d 706, 104 P.2d 639 (1940). We refuse to do so as an abstract proposition of law for several reasons: First, because the case is distinguishable on its facts and the law. In *Snyder*, supra, the issue was whether defendant had the specific intent to commit murder. The defendant had not actually killed the victim, and so that became an important element to be proved. In the instant case, appellant actually committed the theft, so the question was not *whether* he had the intent to commit the theft, but *when* he formed the intent to do so. The law in Arizona is that a specific intent to do an act may be inferred from the circumstances of the doing of the act itself.

"Generally, the intent with which a crime or act is committed may be implied from the facts that establish the doing of the act, and a specific intent may at times be presumed from the conduct of the accused in the doing of the act, as in cases involving an intent to kill." *State v. White*, 102 Ariz. 97, 98, 425 P.2d 424, 425 (1967); see *State v. Preis*, 89 Ariz. 336, 362 P.2d 660, cert. denied, 368 U.S. 934, 82 S.Ct. 372, 7 L.Ed.2d 196 (1961).

For burglary, the law in Arizona is that while the requisite intent may not be inferred from mere entry or theft alone, any additional relevant factors may be sufficient to warrant such an inference. E. g., *State v. Talley*, 112 Ariz. 268, 540 P.2d 1249 (1975) (late hour, unexplained presence in residence of another, and attempt to hide upon discovery); *State v. Hopkins*, 108 Ariz. 210, 495 P.2d 440 (1972) (entry through win-

**334**

dow); *State v. Brookshire*, 107 Ariz. 21, 480 P.2d 985 (1971) (possession of recently stolen property is insufficient). There are several sufficient additional factors in this instance: potentially unsatisfactory explanation for entry, *State v. Hunter*, 102 Ariz. 472, 433 P.2d 22 (1967); entry by manipulation of the door lock, *State v. Hopkins*, supra. The jury could properly infer the requisite intent for burglary from these factors.

■ Another reason we refuse to follow *Snyder*, supra, is because California, in *People v. Zerillo*, 36 Cal.2d 222, 223 P.2d 223 (1950), later modified the effect of the *Snyder* ruling to reach a result similar to that reached in the case before us. Finally we feel that each case should be considered in light of the facts and the wording of the instructions of the case alone. In this regard, having reviewed the record in the case we believe it would be ludicrous to assume that the jury was so confused and misled by the giving of both instructions that they would presume the specific intent element. Not only were the general and specific intent instructions separated by five unrelated instructions, both of them were preceded by the following instruction:

"You must take account of all my instructions on the law. You are not to pick out one instruction or part of one and disregard the others. However, after you have determined the facts, you may find that some instructions do not apply.

"You must then consider the instructions that do apply, together with the facts as you have determined them. Decide the case by applying the law in these instructions to the facts."

With this admonition the instructions were read to the jury by the judge and written copies of them were given to the jury to take into the jury deliberation room. In addition to that, the necessary specific intent requirement was brought home forcefully to the jury in closing arguments no less than six times: twice by the prosecutor, three times by counsel for co-defendant, and once by counsel for appellant himself. Other than the reading of the general intent instruction, Criminal Standard Number 4, no other mention of that instruction was made in argument by any party.

Under the circumstances of this case we conclude that the giving of Criminal Standard Number 4, the general intent instruction, was surplusage and nonprejudicial. Accordingly, the judgment of the trial court is affirmed.

CAMERON, C. J., and HAYS and HOLOHAN, JJ., concur.

STRUCKMEYER, Vice Chief Justice, dissenting.

In Arizona, by statute:

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence." A.R.S. § 13–131.

The intent referred to is merely the intention to do the act, *People v. Wade*, 71 Cal. App.2d 646, 163 P.2d 59 (1945). It does not mean an intent to commit a crime, but is the intent to perform the act, *State v. Booton*, 85 Idaho 51, 375 P.2d 536 (1962).

The court did not instruct the jury in the language of § 13–131; instead, over the defendant's objection, read to the jury Criminal Standard 4 from Arizona's Recommended Jury Instructions on general intent, as follows:

"The state must prove that the defendant has done an act which is forbidden by law and that he intended to do it. You may determine that the defendant intended to do the act if he did it voluntarily. * * * *"

The court correctly told the jury:

"Burglary has two elements: (1) There must be an entry into a dwelling; and (2) the entry must be with the intent to commit a felony or theft."

The instruction, Criminal Standard 4, has the potential to confuse the jury. It says that the State must prove that the defendant has done an act which is forbidden by law and that he intended to do it. But the

only act which is forbidden by law is burglary, itself, and burglary includes a specific intent element. Also, the instruction allows the jury to determine the defendant intended to do the act if he did it voluntarily. The jury, perceiving that all of the defendant's actions were clearly voluntary, might have determined that he entertained the specific intent and was therefore guilty of burglary. Because the instruction is intended to inform the jury of the statute A.R.S. § 13–131, but, in fact, permits the jury to presume a specific intention, I believe it is erroneous.

The majority seem to be arguing that there was enough evidence for them to conclude the defendant intended to commit a theft when he entered the house, and I think so too. However, since it is possible that the jury equated the general intent spoken of in Criminal Standard 4 with the specific intention required under the burglary statute and there was no way of knowing that it did not, the conviction should be reversed.