608 P.2d 44

**STATE of Arizona, Appellee,**

v.

**James Albert ROBISON, Appellant.**

**No. 4127.**

Supreme Court of Arizona, In Banc.

Feb. 25, 1980.

Rehearing Denied March 18, 1980.

**108**

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Derickson, Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

HOLOHAN, Vice Chief Justice.

The appellant James Robison, was tried and convicted of first-degree murder and first-degree conspiracy. He was sentenced to a term of confinement on the conspiracy conviction and sentenced to death for the murder conviction. He appeals the convictions and sentences.

The facts in the case have been set out in some detail in his codefendant Max Dunlap's case. *State v. Dunlap*, 125 Ariz. 104, 608 P.2d 41 (1980). Only those facts will be set forth which are necessary for a full understanding of the legal issues discussed.

In his appeal the appellant has raised many legal issues, but a review of the matters presented discloses that there is no reversible error involved in most of them. We will, therefore, limit our discussion to the critical issue of the limitation of appellant's cross-examination of the state's principal witness.

The appellant maintains that his constitutional right to confront witnesses under the sixth and fourteenth amendments of the United States Constitution was violated in the trial of this case by the limitation of his cross-examination of the state's chief witness.

The case against the appellant and his codefendant Max Dunlap was based primarily on the testimony of John Harvey Adamson. This witness had entered into a plea agreement with the state in which he admitted his participation in the conspiracy and murder of the victim, Don Bolles. Adamson, as part of his plea agreement, agreed to testify in the case against the others involved in the conspiracy and murder. From a review of the evidence it is clear that any conviction of the appellant and his codefendant depended upon the acceptance by the jury of the testimony of Adamson.

According to the direct testimony of Adamson he had been approached by Max Dunlap to arrange the murder of three individuals, one of whom was Don Bolles. Adamson testified that he had been promised money for the killing and that $2,000 had been advanced by Max Dunlap. Adamson contacted his friend, the appellant, to secure his participation in the plan to murder Bolles. Adamson described the events in the planning, execution and subsequent

activities of the crime. Adamson described receiving some $6,000 from Max Dunlap after the crime. In substantially all instances related by Adamson there were no other witnesses to the conversations between him and the defendants. Corroboration of Adamson's testimony depended largely on circumstantial evidence.

After Adamson's direct testimony counsel for the defendants proceeded to cross-examine him at length. The appellant points out, and the record supports him, a number of instances in which cross-examination of Adamson was precluded by his claiming his fifth amendment privilege or the attorney-client privilege.

■ In *State v. Dunlap, supra*, we discussed the problem which occurs when a defendant's sixth amendment right comes in conflict with a witness' fifth amendment privilege. Both constitutional rights must be respected, but a witness' refusal to answer questions on cross-examination may require that the whole or part of the direct testimony of the witness be stricken. *See also United States v. Cardillo*, 316 F.2d 606 (2nd Cir. 1963), *cert. denied*, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55; *Fountain v. United States*, 384 F.2d 624 (5th Cir. 1967), *cert. den. sub nom., Marshall v. United States*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968); *United States v. Newman*, 490 F.2d 139 (3rd Cir. 1974); *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976); *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979); *State v. Montanez*, 215 Kan. 67, 523 P.2d 410 (1974).

■ In determining whether a witness' direct testimony should be subject to a motion to strike the ultimate inquiry is whether the defendant has been deprived of his right to test the truth of the direct testimony. This process often calls for drawing a distinction between the privilege being invoked as to "collateral" matters, in which instance striking the direct testimony is not required, and invoking the privilege as to "direct" matters, which does require a striking of the direct testimony in whole or part.

While the distinction between "direct" and "collateral" testimony is often unclear, the test is whether the defendant's inability to cross-examine created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness' direct testimony. *Fountain v. United States, supra.*

Separate consideration must be given to the several instances in which Adamson refused to answer questions on cross-examination to determine whether appellant's sixth amendment rights were violated.

■ Counsel for appellant asserts that the ability of the defense to effectively cross-examine Adamson was precluded when Adamson invoked his fifth amendment privilege to answering questions concerning the source of money in his possession a few weeks after the murder and whether he filed a 1976 tax return. Counsel for appellant moved to strike Adamson's testimony in whole or in part for his refusal to testify in the above matters.

The cross-examination of Adamson as to the source of money in his possession shortly after the murder was vital to the defense. It was particularly important to appellant's codefendant Dunlap, and that matter is discussed in *State v. Dunlap, supra.* It was also important to the appellant because the direct testimony of Adamson concerned only one source for the payment for the crime. Adamson had at all times maintained that Dunlap was the source of the funds paid for the bombing. Dunlap in turn had denied this allegation and maintained that he was not the source of funds but that other parties whom Adamson refused to name were actually the ones who had paid for the killing. Although the source of funds was much more crucial to the defense of Dunlap it was also of substantial importance to appellant's defense. The state's case depended upon belief of Adamson's direct testimony. If the appellant could impeach that testimony by showing that Adamson was lying concerning the source of the payment for the bombing, it

would cast a doubt on all of Adamson's direct testimony concerning appellant's participation in the crime.

The testimony concerning the source of funds Adamson had in his possession after the bombing was also important to appellant's case in that it could have shown that Adamson was involved in other criminal activities which did not involve any participation by appellant. The evidence in the case indicated that Adamson and appellant were friends and had participated in other activities together. It could have been helpful to the defense to show that Adamson's other criminal activities did not necessarily include the appellant from which the jury might conclude that the appellant was not involved in the bombing plot described by Adamson.

The inquiry concerning the filing of a 1976 tax return was also material to the question of the source of funds in Adamson's possession.

The trial judge permitted Adamson to assert his fifth amendment privilege to the above questions, and we do not question his ruling on this point. The appellant, however, sought to have Adamson's testimony stricken because the appellant's cross-examination had effectively been prevented by the assertion of the fifth amendment privilege. The denial of appellant's motion was error. The state may not put forth a witness with damaging testimony against the defense and then prevent cross-examination of that witness. The defendant's right of confrontation guaranteed under the sixth and fourteenth amendments was denied by the limitation of cross-examination of the state's key witness. The defense was prevented from attacking the testimony of Adamson in an important area necessary to the defense. The refusal of Adamson to answer questions in this area under cross-examination was in effect a method of depriving the defendants of their right and ability to defend against the charge.

The burden of proof in a criminal case is upon the state. Thus, when the prosecution relies primarily on the evidence of a witness who is vulnerable to a claim of lack of credibility, the prosecution, not the defense, must bear the burden of the situation. *United States v. Garrett, supra.* The state may not use a witness' direct testimony without an opportunity by the defense to confront the witness and cross-examine him.

The appellant has pointed out another instance in which the defense was precluded from cross-examining Adamson by his claim of the attorney-client privilege. We find this instance to be of a different quality than the problem associated with the source of funds.

■ Adamson asserted the attorney-client privilege when asked whether he had participated in other bombings. The question had been asked on cross-examination by counsel for Dunlap. When Adamson refused to answer, counsel for Dunlap sought to have his testimony stricken and counsel for appellant joined in the motion.

Earlier in the case counsel for appellant had strenuously objected to the introduction of any reference to Adamson's statement to authorities which described an incident involving the bombing of a building in which he and the appellant participated. The answer to the question posed by counsel for Dunlap would in effect have brought other bombings into the case. The appellant, according to Adamson's pretrial statement, was involved in at least one other bombing. Under the circumstances the refusal of Adamson to answer this line of inquiry could not be said to be prejudicial to the appellant. The inquiry, if pursued, could actually have prejudiced appellant by implicating him in other criminal activity. We, therefore, find no merit in appellant's assertion of error in this instance.

The cross-examination by counsel for Dunlap also illustrates the problems generated by the joinder of these defendants for trial. A large amount of the evidence at trial was common to both defendants, but

there are some matters, particularly those involving other crimes, which are limited to the appellant. To promote a fair determination of the guilt or innocence of the defendants it may be necessary for the cases to be severed upon a retrial.

Finding that the appellant Robison was deprived of his right to cross-examination guaranteed by the sixth and fourteenth amendments of the United States Constitution we must reverse his convictions. The case is remanded to the superior court with directions to grant the appellant a new trial.

STRUCKMEYER, C. J., and HAYS, CAMERON and GORDON, JJ., concur.