630 P.2d 1015

**STATE of Arizona, Appellee,**

v.

**Joe Cota MORALES, Appellant.**

No. 3769–2.

Supreme Court of Arizona,
In Banc.

June 12, 1981.

Rehearing Denied July 14, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Callahan, Morrison, Cathcart & Gorman by Edwin F. Cathcart, Jr., Tempe, Martin & Feldhacker by William H. Feldhacker, Phoenix, for appellant.

CAMERON, Justice.

Defendant Joe Cota Morales appeals from a conviction of first degree murder and a sentence of life imprisonment. We have

jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4035.

The issues we must resolve are:

1. Whether the trial court erred in denying the defendant access to the juvenile file of a State's key witness and accomplice, Cruz Martinez.

2. Whether the trial court erred in not directing a verdict for the defendant because the evidence failed to prove the defendant killed the victim with premeditation.

3. Whether the trial court gave a misleading and incomplete jury instruction on murder by torture.

The facts necessary for a determination of this matter on appeal are as follows. On 10 April 1976, Tony Calistro and Cruz Martinez went to a store to purchase beer and while there met Ruben Melendez and Morales. After obtaining beer and whiskey, the four walked to the backyard of defendant's home. All four had been drinking during the day, and Martinez testified that he had injected himself with heroin about 10:00 a. m. that day. Melendez and Morales began wrestling and Calistro made remarks to them. Angered by his comments, Melendez knocked Calistro down and hit him. Morales and Martinez joined Melendez in hitting and kicking Calistro. They then removed his clothing and carried him to a nearby park which contained playground equipment. They put the victim on the merry-go-round and spun it for a few minutes. Following this, they put him on the ground and kicked and beat him. At some point, Martinez left and returned with a garden hoe and yellow paint. The victim was sodomized by Melendez, paint was poured on him, the handle of the hoe was thrust into his rectum several times, and he was tied to a concrete climbing device. At some time during the night, he received 19 stab wounds. The following morning his body was found with his clothes tied around his neck, arms and feet. The cause of death was multiple stab wounds to the chest. According to Martinez' testimony, the three returned to Morales' home and the defendant told Martinez that he had stabbed the victim and was going to return to the park to "finish him off."

On 20 April 1976, Morales and Melendez were indicted for the murder of Tony Calistro. The two men were tried together, were found guilty of first degree murder, and were subsequently sentenced to death. *State v. Melendez*, 121 Ariz. 1, 588 P.2d 294 (1978); *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978).

The third participant in the murder was Cruz Martinez, who was 15 years old in 1976. He entered into a plea agreement with the State in which, in return for his testimony against Melendez and Morales, he would be treated as a juvenile rather than tried as an adult. Martinez testified and was then placed in custody in Adobe Mountain School, a juvenile facility.

This court reversed the convictions of the defendants and ordered a new trial because of limitations upon the cross-examination of Martinez regarding inducement for his testimony. See *State v. Morales*, supra.

Before the second trial of defendant, defense counsel moved the trial court to compel discovery of the juvenile file on Martinez to review statements made by Martinez to various counselors at Adobe Mountain School and to examine psychological and psychiatric reports prepared after he was placed in custody. This motion and a defense motion for a mental examination of Martinez were denied prior to trial.

Melendez and Morales were separated for retrial. Defendant Morales was tried and convicted of first degree murder. Melendez pleaded guilty to first degree murder and received a life sentence.

## ACCESS TO JUVENILE FILE

The State's key witness was Martinez. Defendant asserts that the trial court erred in denying his motion to compel discovery of the file on Martinez, which was maintained by the Department of Corrections. Defense counsel desired the file for two reasons. First, from a discussion with a counselor at the Adobe Mountain School where Martinez was held, there was reason

to believe that Martinez had made statements about the case which were inconsistent with his testimony at the first trial. Defense counsel contended it was necessary to examine the file to determine whether other inconsistent statements were made by Martinez to other counselors in order to effectively cross-examine and impeach him with these prior inconsistent statements. The second reason related to the mental reports on this witness. Defendant believed the file contained information on the glue sniffing and heroin addiction of Martinez and that this information could be taken to defense experts to evaluate the credibility of Martinez' testimony.

The State, however, contended that A.R.S. § 8–207(C), which reads,

"C. The disposition of a child in the juvenile court may not be used against the child in any case or proceeding in any court other than a juvenile court, whether before or after reaching majority, except in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report and except as provided by § 28–444."

prohibits the discovery not only of dispositions of the juvenile court but of juvenile records. Under the previous statute, A.R.S. § 8–228(B), containing similar language, we stated:

"To permit inspection of juvenile records which are not required to be filed with the Clerk, maintained as work product of juvenile probation officers and staff for use by the juvenile court judge for analytical or other purposes in handling a juvenile case, for the benefit of a person not the juvenile involved, would subvert the intent of the statute. * * * The prejudice sought by the statute to be avoided, would inevitably arise as to the juvenile. Hence the court did not err in refusing plaintiffs' access to any juvenile record of Michael, except those on· file and not restricted." *Parsons v. Smithey*, 109 Ariz. 49, 51, 504 P.2d 1272, 1274, 54 A.L.R.3d 964, 968 (1973).

We believe, however, that the statute (now A.R.S. § 8–207(C)), may not be used to prevent the discovery of juvenile records when it conflicts with a defendant's right to confront witnesses against him and to test the juvenile's credibility. *State v. Rodriguez*, 126 Ariz. 28, 612 P.2d 484 (1980); *State v. Robison*, 125 Ariz. 107, 608 P.2d 44 (1980); *State v. Holden*, 88 Ariz. 43, 352 P.2d 705 (1960). The United States Supreme Court has balanced the defendant's need for confrontation with society's need to preserve the confidentiality of juvenile records:

"The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. * * * [T]he State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." *Davis v. Alaska*, 415 U.S. 308, 320, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347, 356 (1974).

Note, Constitutional Restraints on the Exclusion of Evidence in the Defendant's Favor: The Implications of *Davis v. Alaska*, 73 Mich.L.Rev. 1465, 1471 (1975); *State ex rel. A.S.*, 130 N.J.Super. 388, 327 A.2d 260 (1974), and we have stated:

"A fair trial requires that the accused be able to cross-examine effectively the witnesses against him. If the withholding of a prosecution witness' juvenile record makes it impossible for the accused to cross-examine the witness effectively, the state's policy of protecting juvenile offenders by refusing to disclose their records except in juvenile proceedings must give way to the accused's constitutional right to meaningful confrontation of witnesses. * * *" *State v. Myers*, 117 Ariz. 79, 88, 570 P.2d 1252, 1261 (1977), cert. denied 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978).

The State further contends, however, that the records of the Department of Corrections must be kept confidential because, by statute, the Department of Corrections is required to maintain a master file on all persons committed to it and that:

"C. All files shall be confidential and access shall be limited to authorized personnel of the department except that personnel of other correctional or law enforcement agencies may have access to files under rules and regulations of the department. * * *" A.R.S. § 31–221.

We do not believe that this section prevents the use of information in such file over legitimate impeachment purposes. The right of the defendant to impeach the witness against him must outweigh the right of the witness to the confidentiality of the records in the Department of Corrections. We believe that due process requires that the defendant be allowed to have access to relevant material to aid in cross-examining Martinez about his inconsistent statements and other relevant information bearing on credibility, and it was reversible error to deny the defendant the right to discovery of the witness' file maintained by the Department of Corrections.

" * * * [E]vidence that possesses a significant amount of probative worth should be admitted notwithstanding its potential for confusing or prejudicing the jury against the prosecution's case.

"If a state must choose between admission and exclusion in a situation where exclusion would prevent the defendant from introducing testimony with a significant exculpatory effect, while admission would make it less likely that the jury would be able to evaluate the issues in a rational manner, the confrontation clause should be seen as mandating admission." Note, supra, 73 Mich.L.Rev. at 1491.

### DIRECTED VERDICT

■ Cruz Martinez was an accomplice, see *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978); *State v. Broadfoot*, 115 Ariz. 537, 566 P.2d 685 (1977), and testified against the defendant.

Defendant moved for a directed verdict at the end of the State's case and renewed the motion at the end of the defendant's case. The defendant asserts that the trial court erred in failing to direct a verdict of not guilty to first degree murder because there was no evidence of premeditation other than the uncorroborated testimony of an accomplice (Martinez).

At the time this crime was committed, our criminal code provided:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." A.R.S. § 13–136.

Although the statute was repealed on 24 June 1976, it was in effect at the time the murder was committed on 11 April 1976. The court instructed the jury pursuant to the repealed statute. Defendant, however, contends that if the provisions of the prior statute were in force and effect, then there was not enough evidence to go to the jury because the testimony of the accomplice as to premeditation was not corroborated. We do not agree.

Robert Forry, a police sergeant, testified that he interviewed the defendant the day after the victim was found and that the defendant described the sequence of events which led to the murder in a manner which was consistent with Martinez' version. Yellow paint matching the paint poured on the victim was found on the defendant's boots when he was arrested, and a fingerprint taken from a beer can found at the scene matched defendant's prints. Isaac Sifuentes testified that he saw Martinez and another person kicking a large object on the ground about 1:00 a. m. on 11 April in the same park where the body was found and that another person was running into the park. We believe there is ample evidence other than Martinez' testimony to not only connect the defendant with the crime, but to show premeditation. On this point, Martinez' testimony was sufficiently corroborated.

### JURY INSTRUCTION ON TORTURE MURDER

■ The State based its first degree murder charge on two theories: murder

with premeditation and murder by torture. There is no doubt that an instruction on murder by torture was authorized. See Annot., Murder by Torture, 83 A.L.R.3d 1222 (1978). After the trial judge instructed the jury on premeditation, he gave the following instruction on murder by torture:

"Another type of first degree murder is murder by torture. The crime of murder by torture is committed when the defendant intends to cause extreme pain and suffering for the purpose of revenge, extortion, persuasion, or some other untoward propensity. The crime of murder by torture does not require proof that the defendant intended to kill the victim, but does require proof that the death resulted from the torture. Murder by torture cannot be inferred solely from the mode of assault or injury, but other evidence of intent to cause suffering is also required."

This instruction follows previous case law of this court.

"Murder is perpetrated by torture when the assailant intends to cause cruel suffering for the purpose of revenge, extortion, persuasion, or to satisfy some other untoward propensity. (citations omitted) There need not be an intent to cause death, but there must be a separate intent to cause extreme pain and suffering for one of the enumerated purposes. (citations omitted) It is not enough that defendant intended to cause extreme pain and suffering; there must also be evidence that he did so for revenge, extortion, persuasion or some other untoward propensity. (citations omitted) Furthermore, the death must have been caused by the torture. (citation omitted)" *State v. Brock,* 101 Ariz. 168, 171, 416 P.2d 601, 604 (1966).

The defendant asserts, however, that this instruction was incomplete and misleading because the court did not define the term "untoward propensity" for the jury.

Defendant attempts, by dictionary definition, to show that "untoward propensity" is not clear and that the instruction was therefore incomplete and misleading. We do not agree. Although an instruction defining murder by torture "to satisfy some untoward propensity" standing alone might be vague or misleading, we must read the instructions in their entirety, and consider them as a whole. *State v. Richardson,* 110 Ariz. 48, 514 P.2d 1236 (1973), cert. denied 415 U.S. 929, 94 S.Ct. 1439, 39 L.Ed.2d 487 (1974); *State v. Taylor,* 109 Ariz. 267, 508 P.2d 731 (1973).

" * * * Instructions must be considered as a whole, and no case will be reversed because of some isolated paragraph or portion of an instruction which, standing alone, might be misleading. (citation omitted) And if, from an examination of instructions, they are substantially free from error, an argument on appeal predicated upon an isolated paragraph, which standing alone might be misleading, will be given no weight." *State v. Norgard,* 103 Ariz. 381, 383, 442 P.2d 544, 546 (1968).

When the instructions are read as a whole, the term "or some other untoward propensity" does not result in a misleading or erroneous instruction.

Reversed and remanded for new trial.

HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.

STRUCKMEYER, Chief Justice, concurring.

It bears repeating that Cruz Martinez, a juvenile, had entered into a plea agreement with the prosecution by which, in return for his testimony against Morales, he would be treated as a juvenile rather than being tried for murder as an adult. In this situation, I think a defendant against whom a juvenile is expected to testify should have the right to examine the juvenile's file to discover any defensive relevant matters, particularly statements which would be inconsistent with the juvenile's possible testimony.

I am therefore of the opinion that the right to discovery should not be dependent upon whether prior information has been obtained, possibly surreptitiously, from a counselor or from others who may have

breached the confidentiality of the juvenile record.