669 P.2d 1345

### In the Matter of the APPEAL IN PIMA COUNTY JUVENILE ACTION NO. 61935–4.

No. 2 CA–CIV 4723.

Court of Appeals of Arizona, Division 2.

May 24, 1983.

Review Denied July 19, 1983.

---

Frederic J. Dardis, Pima County Public Defender by Yvonne Ayers, Tucson, for appellant.

Stephen D. Neely, Pima County Atty. by Paul S. Banales, Deputy County Atty., Tucson, for appellee.

HATHAWAY, Judge.

## OPINION

The juvenile has appealed from an adjudication of delinquency made after an evidentiary hearing was held on January 20, 1983. Two points are raised: (1) whether the court erred in warning the juvenile, in the middle of his testimony, to be cognizant of the law regarding perjury, and (2) whether there was sufficient evidence of burglary to support the adjudication. We affirm.

The minor was named in a delinquency petition which alleged one count of criminal damage in an amount less than $100 and one count of third-degree burglary, both counts involving a student locker at a Tucson-area high school. A school district employee, along with the student assigned the locker, testified for the state, and appellant was the only witness for the defense. The transcript shows the following occurred during appellant's testimony:

"Q. Were you anywhere near the locker that we have been talking about, 2955?

A. No, I was not.

Q. When you were in the hall that day, did you see another young man in the hall named Charles Lewis?

A. I met him outside.

Q. Did you see Barbara Blackman when you were inside the building?

A. Huh-uh.

THE COURT: Do me a favor, Ms. Ayers, and instruct your client about perjury, because I am getting an uncomfortable feeling abouty [sic] it.

MS. AYERS: We have gone over this thoroughly, and it is one person's word against another's.

MR. BANALES: It will be his word against Charles Lewis's, because I will charge him with perjury.

THE COURT: I want him to know when he takes an oath he is sworn to tell the truth. If you think he does, and you have discussed it with him, then go ahead.

MS. AYRES: [sic] May I have a minute outside the courtroom?

(Whereupon a recess was taken, after which the proceedings resumed as follows.)

MS. AYERS: At this point the defense would rest. But I would like to make it clear to the Court, and for the record, that simply because of the time limits and the hostility from the bench, that at this point I don't see any further purpose in going ahead, and we would like to recess.

THE COURT: Let me make a record on that point.

There is no hostility from the bench, but it is my job, in running the courtroom and in trial, to ensure that if I feel a witness is a little bit out of order that that witness is properly advised before he continues to testify; and I had a definite feeling that your client was about to perjure himself, and that is a conclusion that I draw as a trier of the facts, and I gave you an opportunity to discuss that with him before he put himself in so deep. If he wants to testify, he can, and he can say whatever he wants to. I want him to know what perjury is, what it means, and if he committed it I will find him guilty. MS. AYERS: The defense would rest at this time, anyhow, and make closing arguments."

Appellant claims the interruption denied him his opportunity to testify to the events as he perceived them and he was "chilled" into foregoing his right to testify in his own defense. The record does not support the claim. Counsel for appellant asked for a recess, after which she informed the court she would not proceed. The court then informed appellant he could testify and say whatever he wanted but he should be aware of the meaning of perjury. Counsel decided to terminate appellant's testimony. The record demonstrates no pressure exerted by the court but rather an effort to insure that appellant was informed regarding perjury. It does not make sense to argue that appellant was "chilled" into foregoing his testimony. Why would a witness who is testifying truthfully cease his testimony after being asked if he were aware of the law of perjury? And if a witness were about to testify falsely, the warning could not be viewed as having a chilling effect since there is no protected right to commit perjury. *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). There was no error.

Appellant's second argument is that the court erred in failing to direct a verdict on the burglary count[1] since there was insufficient evidence presented to support it. Both sides agree as to what the evidence showed but appellant argues that

the requisite intent was not proven. The law in Arizona is that while the requisite intent may not be inferred from mere entry or theft alone, any additional relevant factors may be sufficient to warrant such an inference. *State v. Rodriguez,* 114 Ariz. 331, 560 P.2d 1238 (1977). Here several sufficient additional factors are present: appellant's unexplained presence at the locker with his hand extended into it, see *State v. Talley,* 112 Ariz. 268, 540 P.2d 1249 (1975); his attempt to flee upon discovery, see *State v. Talley,* supra; his unsatisfactory explanation for the entry, see *State v. Hunter,* 102 Ariz. 472, 433 P.2d 22 (1967); the entry by forcing a lock, see *State v. Rodriguez,* supra, and *State v. Hunter,* supra. The court could properly have inferred the requisite intent for burglary from these factors.

Affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.

---

1. Appellant's motion for a directed verdict on the criminal damage count was granted.