673 P.2d 318

**STATE of Arizona, Appellee,**

v.

**Robert Dwayne OPPENHEIMER, Appellant.**

**No. 1 CA–CR 6239.**

Court of Appeals of Arizona, Division 1.

Sept. 20, 1983.

Review Denied Nov. 22, 1983.

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief counsel, Criminal Division and Crane McClennen Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

OPINION

YALE McFATE, Judge (Retired).

Appellant was charged by information with theft, in violation of A.R.S. §§ 13–1802, 13–1801. Subsequently, an allegation of prior conviction was filed. This matter proceeded to trial on April 19, 1982 and after a two day trial, the jury found appellant guilty as charged. The trial court sentenced him to the presumptive term of 11.-25 years for conviction of a class III felony with two prior convictions.

On appeal, appellant raises the following issues:

1. He was denied effective assistance of counsel at trial;

2. The prosecutor improperly introduced evidence that appellant asserted his right to remain silent; and

3. The trial court erroneously instructed the jury.

At the outset, we note that this trial was relatively brief, with few witnesses testifying for either side. The factual background giving rise to this charge is as follows.

On December 22nd or 23rd, 1981, an individual, later positively identified as appellant, approached a car salesman at J & R Motors in Mesa. The salesman testified that appellant spoke with him for approximately half an hour and was primarily interested in two vehicles, one a 1974 Chevrolet Nova and the other an El Camino. The vehicles were equipped with different size engines. The salesman's partner also testified that he remembered appellant being at the lot. Both testified that appellant left the lot but returned the next day and requested permission to take the Chevrolet

Nova to his mechanic to have it inspected. The salesman who had spoken to appellant the day before gave him the keys to the car, and that was the last time they saw the vehicle until it was recovered by the police in January, 1982. Both car salesmen testified at trial that they were shown a photo lineup by a police officer and positively identified appellant's picture as the person who had taken the vehicle.

The next witness for the state testified that in January 1982, he and his stepson noticed a group of young men removing the wheels and tires from a Chevy Nova in the lot of an apartment complex next to them. They approached the individuals and asked them what they were doing. The individuals responded that they had permission to remove the wheels and tires. The state's witness thought it was strange that they would leave the car resting on the hubs of all four wheels and directed his stepson to take down the license numbers of both the Chevy Nova and the El Camino truck into which the wheels were being loaded. The stepson also testified at trial and identified appellant as one of the persons present when the wheels were being removed.

Police officers for Mesa and Tempe then testified to the following: the license number to the El Camino, received from the previous state's witness, was checked with the Department of Motor Vehicles and revealed that the El Camino was registered to appellant; there were no fingerprints retrieved from the Chevy Nova which were identified as belonging to appellant; appellant was eventually arrested on February 5th; he gave his consent to a search of his El Camino and the officers discovered that the El Camino contained the engine and transmission which had been removed from the Chevy Nova; at the time appellant was arrested, he voluntarily gave a statement indicating that he believed the Chevy Nova was stolen, that he had refused any of the parts from the car and, furthermore, that he thought all of the items stripped from

the Chevy Nova had been "parted out"; then, after the officers discovered the engine and transmission in the appellant's El Camino, he changed his story and indicated that Al, who took the car, had evidently lied to him and sold him stolen parts.

Thus, it is obvious that defense counsel was faced with representing a client who would be positively identified by three witnesses, associating him with the theft of the Nova; had an engine and transmission from the stolen vehicle installed in his vehicle; and had made contradictory statements to police officers when arrested. Furthermore, defense counsel apparently determined that it would be necessary to have his client testify and was then faced with having to explain his two prior felony convictions which dealt with fraudulent acts.

With this background before us, we proceed to consider the issues raised by appellant on appeal.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his opening brief, appellant has set forth an extended list of what he claims to be egregious errors by counsel demonstrating that he was denied effective assistance of counsel. While we set forth the individual points appellant argues in support of his position, we do so only to clarify the issues raised by appellant in this appeal. He argues that counsel erred in the following areas: statements made in the opening statement; questioning of his client regarding prior convictions; introducing a prior conviction not alleged by the state in the allegations of prior convictions; failing to request a Rule 609 hearing; failing to request a Dessureault hearing[1]; failing to object to leading questions propounded by the prosecutor; failing to object to the scope of testimony elicited from a police officer with respect to the procedure for "lifting" fingerprints; failing to object to a comment on appellant's right to remain silent; failing to request a hearing to deter-

---

1. So named after *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), which deals with suggestive pretrial identification procedures.

mine the instructions to be given to the jury; failing to object to erroneous instructions and failing to request instructions supporting the theory of his defense; failing to object to the prosecutor's prejudicial closing arguments; failing to prepare for trial by interviewing and/or issuing subpoenas for witnesses and discussing the issues with appellant.

Since *State v. Watson,* 134 Ariz. 1, 653 P.2d 351 (1982), the standard for effective assistance of counsel in Arizona is whether counsel showed at least minimal competence in representing the criminal defendant. 134 Ariz. at 4, 653 P.2d at 354. In making this determination the reviewing court should focus on *"the quality of counsel's performance,* rather than on the effect of that performance on the outcome of the proceeding." Id., 134 Ariz. at 4, 653 P.2d at 354. Furthermore, as noted in both *State v. Watson, supra,* and *State v. Thomas,* 133 Ariz. 533, 652 P.2d 1380 (1982), disagreements as to trial strategy or errors in trial tactics will not support an ineffectiveness claim, as long as the challenged conduct could have had some reasoned basis. *State v. Watson, supra.* The burden of establishing ineffectiveness of trial counsel is on the claimant. *State v. Tison,* 129 Ariz. 546, 633 P.2d 355 (1981); *State v. McDaniel,* 136 Ariz. 188, 198, 665 P.2d 70 at 80 (1983). As noted in *State v. McDaniel, supra,* "proof of ineffectiveness must be a demonstrable reality rather than a matter of speculation."

We have carefully reviewed each of the listed objections by appellate counsel and cannot help but reflect on the observation made by our Supreme Court in *State v. Zuck,* 134 Ariz. 509 at 515, 658 P.2d 162 at 168 (1982) that, "[t]his issue of competency of trial counsel now appears to be increasingly more popular with appellate counsel, and we have some concern that maligned

trial counsel have little opportunity to defend their handling of a criminal case. What jewel has greater value to a trial lawyer than his reputation for competency?" We have carefully reviewed the record, in light of the problems which confronted defense counsel, including the criminal record of his client and the witnesses and evidence available to the state. Having done so, we conclude that the strategy and choices of counsel were reasonable. That appellate counsel now disagrees with that strategy or claims errors in trial tactics is not enough to support a finding that the trial lawyer's conduct was incompetent. We think there was a demonstrable and reasoned basis for all of the choices made by trial counsel.

We note at the outset that counsel obviously decided to forgo a Rule 609[2] hearing and so stated to the trial court, because he elected to put his client on the witness stand, realizing that in view of the nature and timeliness of his prior convictions, a Rule 609 hearing would probably be quite fruitless. Trial tactics are often influenced by subtle circumstances, such as balancing the risk of annoying a jury by trial delays with the possibility of a favorable ruling on a motion heard in chambers. We hesitate to brand counsel's decision to forgo such a hearing in this case as demonstrating less than minimal professional competence. *Cf. State v. McDaniel, supra.* The only other particular aspect of appellant's complaint that we address individually is the claim that counsel was ineffective because he failed to request a *Dessureault* hearing. This was one of the specific points set out in *State v. Watson, supra,* as an example of an issue that a defense attorney would normally raise. In *Watson,* the court stated:

2. Rule 609, Arizona Rules of Evidence, in relevant part reads:

Impeachment by Evidence of Conviction of Crime

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement, regardless of the punishment.

In representation of a person accused of crime, every defense attorney would be expected to file pre-trial motions when the facts raise issues concerning the voluntariness of statements, the legality of searches, or the suggestiveness of identification. Failure by an attorney to pursue such matters would be considered representation which falls below the minimum standards of professional competence required of defense counsel.

134 Ariz. at 4–5, 653 P.2d at 354–55. We note that these examples are predicated on a statement that they should be filed "when the facts raise issues" concerning the various matters listed.

■ In this case, we do not believe the photo spread shown by the police officers to the witnesses raised any issue whatsoever as to the suggestiveness of identification. At trial, their testimony was clear, unequivocal, and positive that they immediately identified appellant in the photo spread. In addition, the officer testified that each of the witnesses had, in fact, identified appellant as the person who had either been near the Nova or drove it off the car lot. While appellate counsel argues that the sole issue at trial was identification, which we believe is an accurate assessment of the defense posture of the case, we disagree that there was a significant issue raised by the photo identification procedure. We have carefully reviewed the photographs in the photo spread introduced at trial as exhibit number seven, and have concluded that there was no basis in fact to argue that the spread was suggestive.

Furthermore, we note that defense counsel attempted to attack the reliability of the witnesses' identification at trial. In *State v. Thomas, supra,* the court found that trial counsel's decision to subject a witness to a rigorous cross-examination in an attempt to discredit his story rather than to move to suppress his testimony altogether because he had been subjected to hypnosis was a trial tactic or strategem which did not constitute inadequate representation. 133 Ariz. at 538, 652 P.2d at 1386. As in *State v. Thomas, supra,* appellant's trial counsel

apparently chose, as a matter of trial tactics, to subject the photo identification to rigorous cross-examination in an attempt to discredit the identification of the witnesses rather than to move for suppression of the photos at a pretrial hearing. This was consistent with the defense theory that the appellant had never gone to the car lot.

With respect to all other points raised by appellant, we find that they resulted from intelligent, reasoned choices by counsel. That the record fails to reflect a jury instruction settlement conference is of no moment for two reasons. First, the jury was properly instructed and second, there were a number of off-the-record conferences.

## COMMENT ON APPELLANT'S RIGHT TO REMAIN SILENT

At trial, one of the officers who had taken a statement from appellant following his arrest, testified as follows:

Q. Okay did you ask him whether or not he would waive his rights and talk to you?

A. Yes, sir, I did.

Q. And what did he say?

A. He said he would talk to us depending on what questions I asked him.

Q. He said he would talk to you depending on what you asked him?

A. Yes. In other words he said if he didn't feel like answering some questions he wouldn't.

Appellant argues that this type of evidence is in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellate counsel argues that while it is unclear as to which particular statements the appellant chose not to answer, even if he answered all of the questions it was still fundamental error for the officer to testify that the appellant made the above statement.

■ It is fundamental error to introduce testimony that a criminal defendant elected to remain silent when he had a constitutional right to do so. *State v. Sorrell,* 132 Ariz. 328, 329, 645 P.2d 1242 (1982). Here, the police officer simply stated what had oc-

curred during the interview of appellant. A similar incident occurred in *State v. Davis,* 119 Ariz. 529, 533, 582 P.2d 175 (1978), and *State v. Lee,* 114 Ariz. 101, 104, 559 P.2d 657 (1976). Both of these cases pointed out that the officer was simply stating what had occurred during the course of an interview and that the error, if any, was harmless. *See also, United States v. Haro-Portillo,* 531 F.2d 962, 963–64 (9th Cir.1976).

■ Not only did the prosecutor not comment on appellant's assertion of his right to remain silent, but appellant did not refuse to talk or assert his right to remain silent. Furthermore, we think the record amply demonstrates that appellant did not refuse to answer any of the questions asked of him by the police. Therefore, there could have been no improper comment on his silence because he was not silent. We believe this issue borders on being frivolous.

## JURY INSTRUCTIONS

■ Appellant argues that the trial court incorrectly instructed the jury as follows:

The State must prove that the defendant has done an act which is forbidden by law and that he intended to do it. You may determine that the defendant intended to do the act if he did it voluntarily.

Appellant argues that both *State v. Mincey,* 130 Ariz. 389, 636 P.2d 637 (1981), and *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), condemn this instruction. He argues that it was fundamental, reversible error to instruct the jury in this manner. We disagree.

Recently in *State v. Earby,* 136 Ariz. 246, 665 P.2d 590 (1983), this court had occasion to review an instruction almost identical to that given by the trial court in this case. The instruction is also similar to that approved in *State v. Rodriguez,* 114 Ariz. 331, 560 P.2d 1238 (1977). The instruction was approved in both *Rodriguez* and *Earby* because it creates merely a permissive inference, *i.e.,* it allows, but does not require, the

jury to infer intent from the commission of the act and therefore places no burden upon the defendant. *See State v. Earby, supra,* 136 Ariz. at 248, 665 P.2d at 592.

Finally, appellant argues that the trial court erred when it gave the following verbal instruction to the jurors:

You have heard some evidence that the defendant in this case, Mr. Oppenheimer, has a prior conviction on his record. You cannot consider those prior convictions as evidence of his guilt in this case. You must not think that just because he's been previously convicted of a crime he's therefore guilty of this crime. The only reason why the evidence of his prior convictions was admitted here in court as evidence was for your consideration of the importance of his testimony. Specifically, his credibility. That is the only reason for which you may consider the evidence of his prior convictions.

We note that the record reflects that this instruction was apparently agreed upon after the trial court had finished instructing the jurors. A discussion was held at the bench between the court and counsel out of the hearing of the jury and court reporter. Immediately thereafter, the court advised the jurors that there was one further instruction that the attorneys had brought to his attention that should be given to them. The court also noted that it still had to be typed up but that it would be included in the packet of instructions in the jury room. Thereafter, the court instructed the jurors as noted above.

■ While we think the verbal instruction could have been more carefully stated, it is obvious that the statement objected to, *i.e.,* that "the only reason why the evidence of his prior convictions was admitted here in court as evidence was for your consideration of the *importance* of his testimony, specifically, his credibility", did not prejudice the rights of the appellant. Furthermore, we note the written instruction was a correct statement of the law.[3] When the

---

**3.** The instruction was as follows:

Evidence of the defendant's prior felony conviction may be considered by you only to assist

instructions are read as a whole, we do not believe the isolated verbal statement resulted in a misleading or erroneous instruction to the prejudice of appellant. Therefore, reversal and remand for a new trial is inappropriate. *State v. Morales,* 129 Ariz. 283, 287, 630 P.2d 1015 (1981).

Judgment affirmed.

CONTRERAS, J., concurs.

NOTE: The Honorable YALE McFATE, a retired judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 20.

KLEINSCHMIDT, Judge, concurring.

I concur with most of the majority's conclusions and with the ultimate result. I do not agree that there could be any reason to forgo a hearing pursuant to Rule 609 to preclude the admission of the prior convictions. A defendant who requests such a hearing has nothing to lose and everything to gain. While it certainly would not have been an abuse of discretion to admit the priors even if the appellant had made a motion to exclude the evidence, he should have invoked the court's discretion on the question before he himself put the evidence before the jury.

I also believe that counsel who ventures into a trial where identification is an issue without requesting a *Dessureault* hearing is on thin ice. *State v. Watson, supra,* read literally, can be taken to stand for the proposition that where identity is an issue the failure to ask for a *Dessureault* hearing is *per se* a denial of the effective assistance of counsel. I do not think that *Watson* is that rigid. For one thing, in *Watson* the identification of the defendant was far more tenuous than it was here. For another, in *Watson* it is clear that evidence that would probably have been elicited at a *Dessureault* hearing would have seriously undermined the state's witness who identified the defendant. For still another, as the majority notes, the supreme court said that such a

hearing is required "when the facts raise issues" concerning the matter. Of course, without such a hearing defense counsel is often not in a position to know whether the facts raise issues, *i.e.,* he may not know that he has a point to make until he cross-examines the identification witness. It is not unusual at all for such witnesses to decline an informal interview with defense counsel. The record here does not disclose what counsel did or did not know about what the identification witness would say.

Be that as it may, an inspection of the lineup photographs and the transcript of the cross-examination concerning the identification procedures used shows that the identification technique was not unduly suggestive. I am not prepared to say that on the whole record counsel did not display minimal competence because his performance was acceptable in other respects. Even without the admission of the prior convictions the evidence against the defendant was so overwhelming that it is difficult to see how anyone could have saved him from conviction. *State v. Watson* recognizes that mistakes of counsel can constitute harmless error.

Finally, I concur in the majority's conclusion as to the witness' testimony about the defendant's invoking his right not to answer questions because the record does not show that the defendant ever refused to answer any questions that were material to the issue of his guilt or innocence. For that reason it is unnecessary to rest the affirmance on the rule of *State v. Lee, supra,* to the effect that the prosecution may show that a defendant wanted to stop answering questions when doing so "explained what happened" during the course of an interview. Of course, I am required to follow *Lee* but as long as the majority relies upon it I think it proper to say that I believe it to be wrongfully decided. An examination of *United States v. Haro-Portillo,* 531 F.2d 962 (9th Cir.1976), upon which *Lee* rests, shows that the rule was adopted without much

you in assessing his credibility. It is not evidence of his guilt. His conviction does not necessarily mean you must disbelieve his testi-

mony. It is a factor which you may consider, among others, in determining his credibility.

analysis. Unless it is somehow misleading to simply end the narration of a defendant's statements the prosecution should not be able to show that a defendant invoked his privilege against self-incrimination just because to do so "explained what happened" during the course of an interview. Jurors are just as likely to draw an improper conclusion from such evidence as they would if the state were permitted to show that a defendant refused to talk to the police at all or were permitted to comment upon a defendant's failure to testify. In *State v. Davis,* 119 Ariz. 529, 582 P.2d 175 (1978), the state conceded that it was error to admit evidence that the defendant refused to answer any questions put to him by the police but found the error harmless under the circumstances of that case.