650 P.2d 1195

**STATE of Arizona, Appellee,**

v.

**Danny Adam STOLP, Appellant.**

**No. 5397.**

Supreme Court of Arizona,
In Banc.

June 2, 1982.

Rehearing Denied Sept. 14, 1982.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Michael D. Jones, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, John Foreman, Anne Kappes, Deputy Public Defenders, Phoenix, for appellant.

GORDON, Vice Chief Justice:

Appellant was convicted of one count of aggravated assault and one count of sexual assault. The jury also found to be true the allegation of dangerous nature on each count, see A.R.S. § 13–604, and the court sitting alone found true the allegations of two prior convictions. The trial judge sentenced appellant to these consecutive terms: twenty years for the aggravated assault; twenty-eight years for the sexual assault. Taking jurisdiction pursuant to Ariz.Const. Art. 6, § 5(3) and Ariz.R.S.Ct. 47(e)(5), we affirm the sexual assault conviction and sentence but reverse and remand for a new trial the aggravated assault conviction.

FACTS

On December 20, 1979, Michelle Childs was accosted by a man with a knife near 51st Avenue and Mountain View in Glendale, Arizona. The man held the knife to

her throat and threatened to kill her if she screamed, but she managed to escape.

On January 16, 1980, a fourteen year old girl walking near 51st Avenue and Olive in Glendale was grabbed by a man who held a knife to her throat and threatened to kill her if she screamed. The attacker undressed her, raped her, sodomized her, and then ran.

Both victims gave the police general descriptions of their assailant. Then on January 19, 1980, three days after the second attack, the police asked both victims to come to the police station to be hypnotized. The purpose of the hypnotic sessions was to obtain a more detailed description of the assailant.

■ The sessions were conducted separately. While under hypnosis, Ms. Childs described her attacker to a police artist who drew a picture from the description. The police tried to hypnotize the fourteen year old victim, but she testified at the *Dessureault* hearing [1] that she never entered a hypnotic state. Her description during and after the time of the attempted hypnosis was the same as her description before the hypnosis. She did see the picture resulting from Ms. Childs' session, however, and she stated that it looked like the man who had assaulted her.

Three days later, Ms. Childs' brother spotted appellant walking along Mountain View at 50th Avenue. He immediately noticed that appellant looked like the person in the picture drawn during his sister's hypnotic session. Appellant was arrested, and a knife and other physical evidence were eventually seized.

Appellant raises only one issue on appeal. He argues that the testimony at trial of both victims should have been excluded under *State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981). We consider each case separately.

---

1. A defendant in a criminal trial has a right to a hearing to determine whether a pretrial identification was so unduly suggestive that a subsequent in-court identification should be sup-

## THE AGGRAVATED ASSAULT

■ Before trial, Ms. Childs was hypnotized and questioned about the identity of her attacker. In *State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981), we held that a witness in a criminal trial is incompetent to testify as to either posthypnotic recall or prehypnotic statements. We modified *Mena* concerning prehypnotic statements in the rehearing opinion in *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982), but added in the original *Collins* opinion that *Mena* and *State ex rel. Collins* would be applied prospectively only, *State ex rel. Collins v. Superior Court, supra* (original opinion filed January 7, 1982). In cases where the hypnosis and subsequent testimony preceded our decision in *Mena*, we will not reverse if introduction of the testimony amounted to harmless error. *State ex rel. Collins, supra* (original opinion).

■ In the instant case, the hypnosis and the posthypnotic testimony occurred pre-*Mena*. Ms. Childs could not precisely describe or identify her attacker until after she had been hypnotized. No precautions were taken to safeguard against suggestibility in the hypnotic session. At trial, she testified as to her posthypnotic recall. Ms. Childs was the only witness to her assault. Appellant's defense was alibi and misidentification. Under these circumstances, we cannot say introduction of Ms. Childs' posthypnotic testimony was harmless error. Her testimony was the major source both of direct proof against appellant and rebuttal of his defense. Therefore, appellant's conviction for aggravated assault must be reversed and remanded for a new trial.

## THE SEXUAL ASSAULT

We find that *Mena* and *State ex rel. Collins* do not apply to the sexual assault case. Appellant in his brief assumes that the victim had been hypnotized, but the record does not support this assumption.

---

pressed. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

It is true that some people who have been hypnotized sincerely believe that they never did enter a hypnotic state. Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness,* 68 Calif.L. Rev. 313, 330 n. 82. But nothing in the record in the instant case contradicts the victim's *Dessureault* hearing testimony that despite the police efforts, she was never successfully hypnotized. The police attempted to use a light hypnotic trance to relax the victim and allow her to concentrate. The session took place only three days after the brutal attack upon her, however, and she stated that she was still too upset to relax. Moreover, her general description of her attacker remained the same before, during, and after hypnosis.

We do not at this time establish a burden of proof for the state to meet when it asserts that one of its witnesses subjected to a hypnotic session was in fact never hypnotized. We encourage the state to avoid such situations because of the difficulty of proving when someone subjected to hypnosis has or has not entered a hypnotic trance (although we note the attempted hypnosis in this case occurred before we established the prospective only rule of *Mena* and *State ex rel. Collins*). In the instant case, however, the record is uncontradicted in establishing that the victim was not hypnotized.

Appellant has also argued that all evidence that was derived from the police artist's conception of Ms. Childs' assailant was tainted by the hypnosis that helped produce the picture and, therefore, should be suppressed. We disagree. As we noted in the original opinion in *State ex rel. Collins, supra,* evidence obtained from leads developed from a hypnotic session is not susceptible to the unreliability problems connected with posthypnotic testimony, so long as the evidence is not a posthypnotic statement of the person hypnotized. Such evidence cannot be suggested or confabulated; nor is it subject to any of the other dangers of hypnosis. Therefore, there was no taint on the evidence obtained as a result of the police artist's drawing of a suspect from Ms. Childs' hypnotically induced description.

Pursuant to A.R.S. § 13–4035, we have searched the record for fundamental error but have found none. The sexual assault conviction and sentence is affirmed; the aggravated assault conviction is reversed and remanded for a new trial.

CAMERON and FELDMAN, JJ., concur.

HAYS, Justice (concurring in part and dissenting in part):

I concur with the holding affirming the judgment and conviction on the sexual assault count. I dissent from the opinion and holding on the aggravated assault count.

HOLOHAN, Chief Justice, concurring and dissenting:

I concur in the affirmance of the sexual assault conviction, but I dissent from the reversal of the aggravated assault conviction.

While much has been written by this court on the subject of hypnotism, the facts of this case illustrate the absurd result caused by this court's current rule on hypnotically developed recall. The testimony of the witness subjected to hypnotism was corroborated by an independent non-hypnotized witness. To cast aside the corroborated testimony of this victim and witness does more damage to our system than the phantom dangers described by the several opinions of this court on the subject.

I would affirm both convictions.