**Joseph COREY, Real Party In Interest, Defendant/Appellant.**

**No. 16228.**

Supreme Court of Arizona, En Banc.

Oct. 14, 1982.

---

652 P.2d 1380

**STATE of Arizona, Appellee,**

v.

**Frederick Francis THOMAS, Appellant.**

**No. 5170.**

Supreme Court of Arizona, In Banc.

Oct. 18, 1982.

Rehearing Denied Nov. 9, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Jessica Gifford, Asst. Attys. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

Frederick F. Thomas, in pro. per.

CAMERON, Justice.

Defendant, Frederick Francis Thomas, was convicted by a jury on 17 October 1980 of first degree murder in violation of A.R.S. § 13–1105. He was sentenced to life imprisonment without possibility of parole for 25 years. A.R.S. § 13–703. Defendant now appeals both his conviction and his sentence. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4035.

We must answer the following questions on appeal:

1. Did dismissal of a juror for cause after stating her desire not to be a juror in a case where the death penalty might be imposed deprive the defendant of his right to an impartial jury?

2. Was testimony in this instance of a witness who had been hypnotized and who testified at trial prior to our decision in *State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981) harmless error?

3. Was the defendant denied effective assistance of counsel where his counsel did not move to suppress the testimony of a witness known to have been hypnotized by the authorities?

4. Did the trial court's instruction that all jurors must agree on a verdict constitute fundamental error?

5. Does the failure to credit pre-sentence incarceration against a life imprisonment term violate A.R.S. § 13–709?

The facts necessary for a determination of this matter are as follows. Cord Dougherty, Ronnie and Brenda Lindsey, and Harold Parker, the victim, were drinking wine in Patriot's Park on 28 January 1980. Defendant struck up a conversation with the group. He eventually discussed attempting a bank robbery in Texas. They later met Mike Mickelson and together drove out to South Mountain Park to camp overnight. During the drive, Harold Parker expressed reservations about committing the robbery. At the campsite, defendant walked up a hill where he conferred privately with each member of the group except Parker. He told them they had to get rid of "the kid," Harold Parker, because he was talking too much and could subvert the robbery plan. Defendant sent Mickelson and Brenda Lindsey to a shopping center to try to sell some stereo speakers in order to purchase more wine. While they were gone, the others gathered firewood. Defendant walked up behind the victim and stabbed him with a knife. Ron Lindsey then stabbed the victim several times with a buck knife and cut the victim's throat. At defendant's direction, Lindsey and Dougherty buried the body with rocks and tree limbs. The next morning, Mickelson, Dougherty and Ron Lindsey donated plasma to get money to travel. Mickelson left the plasma center through the back door without telling his companions and departed for California, where he reported the murder to the authorities. Defendant, Dougherty, Brenda Lindsey and Ron Lindsey drove to Oklahoma together in the Lindsey's car, where the police arrested them for the murder of Harold Parker.

At the jury voir dire preceding the defendant's trial, the judge asked the jurors whether the possible imposition of the death penalty might affect their impartiality. The judge excused several jurors for cause following the inquiry. During the trial, Mike Mickelson, who had been hypnotized in order to refresh his memory after

giving statements to California and Arizona police, testified against the defendant.

The jury found defendant guilty of first degree murder. The trial court found that there were no aggravating circumstances and imposed a life sentence without possibility of parole for 25 years, giving defendant credit for 286 days of incarceration against the life sentence, but not against the 25 years to be served before parole eligibility.

### JURY IMPARTIALITY

During voir dire of the jury, these exchanges occurred:

"THE COURT: Are there any of you who favor the use of the death penalty in capital cases?

     *    *    *    *    *    *

"MS. CATES: I believe it ought to be used, but I certainly would hate to be on a jury that's going to—you know, that this will be the end result.

     *    *    *    *    *    *

"THE COURT: Do any of you feel you would prefer not to sit on this jury, because first degree murder provides for the possibility of the death sentence? Ms. Cates?

"MS. CATES: Definitely."

Ms. Cates was subsequently excused by the court.

The defendant contends that his conviction must be reversed because a juror was excluded from the panel by the trial court following her responses to queries concerning the death penalty on voir dire. Defendant states that the juror's exclusion violates his United States Constitution 6th and 14th Amendment rights, as well as rights arising under Article 2 § 24 of the Arizona Constitution, which reads in part:

"§ 24. Rights of accused in criminal prosecutions

"Section 24. In criminal prosecutions, the accused shall have the right * * * to have a speedy public trial by an impartial jury * * *."

To support his United States constitutional claim, defendant cites *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Witherspoon court held that a death sentence cannot be executed if the jury finding the defendant guilty was culled of veniremen stating general objections to the death penalty or expressing conscientious or religious scruples against its imposition. But the Witherspoon court proceeded to state:

"Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction,* as opposed to the *sentence,* in this or any other case." *Witherspoon v. Illinois,* supra, 391 U.S. at 522, n. 21, 88 S.Ct. at 1777, n. 21, 20 L.Ed.2d at 785, n. 21. (emphasis in original)

■ In the present case, Thomas was sentenced to life imprisonment. Thus the rule stated in Witherspoon and followed by *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), does not help defendant. Since the defendant did not receive the death penalty, the conviction stands. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *State v. Prewitt,* 104 Ariz. 326, 452 P.2d 500 (1969); *State v. Madden,* 104 Ariz. 111, 449 P.2d 39 (1969).

■ The defendant argues, however, that dismissal of a single juror due to express reservations about the death penalty required him to select his jury from a panel biased in favor of conviction. The argument that such a jury is "prosecution prone" has been rejected by this court in *State v. Prewitt,* supra, and *State v. Madden,* supra. As the United States Supreme Court stated in *Witherspoon,* supra:

"The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt.

We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a *per se* constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was." 391 U.S. at 517–18, 88 S.Ct. at 1774–75, 20 L.Ed.2d at 782. (Footnote omitted) *Accord Bumper,* supra, 391 U.S. at 545, 88 S.Ct. at 1790, 20 L.Ed.2d at 800–01.

■ The defendant contends further, however, that the trial court's dismissal of a juror for cause has the effect of granting the State an additional peremptory challenge in violation of Rule 18.4(c), Arizona Rules of Criminal Procedure, 17 A.R.S. Admittedly, whenever a court excuses a juror, such removal may aid one party or the other, as the juror's removal by the court enables the party who might otherwise be disadvantaged by the presence of the juror on the panel to conserve its peremptory challenge for another juror. However, absent some showing of abuse and resulting prejudice, Rule 18.4(a) does not require reversal so long as a party's right to an impartial jury is not impaired. The defendant is not entitled to a particular jury, but only a fair one, *State v. Greenawalt,* 128 Ariz. 150, 624 P.2d 828 (1981); *State v. Arnett,* 119 Ariz. 38, 579 P.2d 542 (1978); *State v. Hilliard,* 89 Ariz. 129, 359 P.2d 66 (1961), and unless the record affirmatively shows that defendant was not tried by a fair and impartial jury, then there is no error. *State v. Zimmer,* 106 Ariz. 166, 472 P.2d 35 (1970). In the instant case, there is no showing that the jury was not fair and impartial and Art. 2 § 24 of the Arizona Constitution was not violated. We find no error.

## USE OF HYPNOTIZED WITNESS

On the 5th day of February 1980, Mike Mickelson was hypnotized by a Phoenix detective after Mickelson reported to police the events surrounding the crime of which the defendant was convicted. On 15 and 16 October 1980, Mickelson testified at defendant's trial. Defendant contends that under *State v. Mena,* supra, Mickelson's testimony should have been excluded, and that his right to a fair trial was violated when the testimony was admitted. In *Mena* we held, among other things, that a criminal trial witness who has undergone hypnosis is incompetent to testify to post-hypnotic recall.

■ In *State v. Stolp,* 133 Ariz. 213, 650 P.2d 1195 (1982), we set forth the rule that "[i]n cases where the hypnosis and subsequent testimony preceded our decision in Mena, we will not reverse if introduction of the testimony amounted to harmless error." *State v. Stolp,* supra, 133 Ariz. at 214, 650 P.2d at 1196, citing *State ex rel Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266 (1982). Since the defendant's trial preceded the February 1981 filing of *Mena,* supra, *Stolp,* supra, applies. Of course, the harmless error doctrine as espoused by the United States Supreme Court in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), is recognized by the Arizona courts. *State v. Jackson,* 109 Ariz. 559, 514 P.2d 480 (1973); *State v. Devaney,* 18 Ariz.App. 98, 500 P.2d 629 (1972). There is a difference, however, between harmless error and non-prejudicial error. The harmless error doctrine concerns errors of a fundamental or constitutional nature, and permits such errors to be raised at any stage of the judicial process. In contrast, the non-prejudicial error doctrine concerns errors that are not of a fundamental or constitutional nature, and requires that such errors initially be challenged in the trial court in order to be preserved for appeal.

"The rule is well settled in Arizona that the failure of counsel to object constitutes a waiver, and there is no basis for appeal. (citation omitted) It is, however, subject to the exception that a court should notice defects on its own initiative which affect substantial rights, principally those affecting constitutional rights, solely to prevent a miscarriage of justice." *State v. Gilreath,* 107 Ariz. 318, 319, 487 P.2d 385, 386 (1971).

In *Stolp,* supra, we indicated that the harmless error doctrine would apply. This may have been misleading because it implied that error in the admission of testimony by witnesses who have been hypnotized is of a fundamental or constitutional level, and, as such, no objection need be made in the trial court in order to preserve the matter on appeal. What we intended in *Stolp* was to treat this issue as fundamental error only in those cases which occurred prior to *Mena,* therefore allowing the issue in such cases to be raised on appeal without counsel having made an objection at trial. We did not intend to hold, as to testimony received after *Mena,* that violation of *Mena* would be fundamental or constitutional error. As to hypnotically related testimony received after *Mena,* counsel must object to the admission in the trial court before it may be preserved on appeal.

In the instant case, the hypnosis issue is properly before this court. The standard on appeal is identical for both the harmless error and non-prejudicial error doctrines.

"Whether denominated harmless error, as when dealing with constitutional error, *Chapman,* supra, or prejudicial error, A.R.S. § 13–3987, as when dealing with non-constitutional error, the test is the same. If it can be said that the error, beyond a reasonable doubt, had no influence on the verdict of the jury, then we will not reverse. (citation omitted) The question is not whether, absent the error, there were sufficient facts from which the jury could find the defendant guilty, the question is whether, without this evidence, the appellate court can say, beyond a reasonable doubt, that the jury would have found the defendant guilty." *State v. McVay,* 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980).

Applying this rule, we believe that without Mickelson's testimony, the jury, beyond a reasonable doubt, would have found the defendant guilty. Admittedly, Mike Mickelson did provide evidence that defendant intended to murder the victim:

"* * * he [defendant] told me he was going to eliminate Parker and he asked if I agreed and I didn't argue with him. * * He had called Parker a snitch."

But Mickelson's testimony was not the principal or most telling source of direct proof against the defendant. Mickelson was absent when the stabbing occurred; he had been dispatched to a shopping center several miles from the crime scene. Testimony was given by two other eyewitnesses to the murder. Witness Cord Dougherty, who helped bury the victim, testified, "He [defendant] said 'The kid had to be got rid of, because he was talking—talking wrong,' about the kid slipping up and getting us busted." Ron Lindsey, who stabbed the victim, testified that, "He [defendant] was telling me that Mr. Parker had to be done in—had to be done away with; that he was afraid that he might blow * * * the heist case in El Paso, Texas." A third witness, Brenda Lindsey, testified that Thomas said he wanted to get rid of the victim because he didn't trust him.

Mickelson's testimony was merely cumulative of the testimony that convicted the defendant. We find no error.

## EFFECTIVENESS OF REPRESENTATION

■ Defendant contends that he was denied a fair trial due to ineffective assistance of counsel. He claims that his trial counsel was unaware that Mickelson was subjected to hypnosis, and that his counsel's failure to object to the introduction of Mickelson's testimony substantially prejudiced his case. Thomas' trial counsel knew, contrary to defendant's assertion, that Mickelson had been hypnotized by Phoenix police in February of 1980. At the post-conviction (Rule 32) hearing, counsel testified that he deliberately decided not to move to suppress the witness' testimony, based on his understanding of Mickelson's prehypnosis statements to the authorities and of the existing case law on the admissibility of such testimony. The attorney stated that there was at the time only one case concerning hypnosis and that it was not conclusive on the facts in the instant case. He also stated he had gone over Mickelson's prehypnosis statements before the trial and that they did not conflict with Mickelson's trial testimony.

Defendant's trial counsel apparently chose, as a matter of trial tactics, to subject Mickelson to a rigorous cross-examination in an attempt to discredit his story rather than to move to suppress his testimony altogether. This was consistent with the defense theory that the testimony of the witnesses present at the killing was fabricated to cast the entire responsibility for the crime on the defendant while exculpating themselves.

We have abandoned the "farce and sham" standard for gauging effective representation in favor of a stricter test which focuses on the "quality of counsel's performance" measured against "minimal professional competence." *State v. Watson,* No. 3201–PR–2, filed this day. Under this standard, we find no error. Even if the trial attorney's strategem in preferring cross-examination to testimonial suppression was not an effective tactic, errors in trial tactics per se do not constitute inadequate representation. *Compare State v. Tison,* 129 Ariz. 546, 633 P.2d 355 (1981) *with State v. Carriger,* 132 Ariz. 301, 645 P.2d 816 (1982). The attorney's conduct at trial did not so prejudice the defendant as to constitute ineffective representation under either the former or current standard. *State v. Ortiz,* 131 Ariz. 195, 639 P.2d 1020 (1981). See American Bar Association, Standards for Criminal Justice, Chapt. 4, Part VII (The Defense Function: Trial) (1980).

## JURY INSTRUCTIONS

■ At the close of the evidence and arguments, the trial court charged the jury:

"All 12 of you must agree on a verdict. All 12 of you must agree whether the verdict is guilty or not guilty. When you go to the jury room, you will choose a foreman who will be in charge during your deliberations and who will sign any verdict."

The defendant contends that the trial court erred by giving Recommended Arizona Jury Instruction (RAJI) 1.10 cited above. The defendant claims that lack of an explanatory instruction, that the jury is not obliged to reach a verdict if no agreement on the facts can be reached, has the effect of coercing the jury to arrive at a unanimous verdict as to guilt or innocence. We note that objection to this instruction was not made during the trial, as is required by Rule 21.3(c), Arizona Rules of Criminal Procedure, 17 A.R.S., and was therefore not preserved on appeal. Thomas argues, however, that the instruction constitutes fundamental error, which enables him to raise this claim for the first time on appeal. *State v. Edgar,* 126 Ariz. 206, 613 P.2d 1262 (1980). We do not agree.

Admittedly, as we have discussed supra, if the alleged error was fundamental or constitutional, we would have to consider the question on appeal. In the context of jury instructions, this court has defined fundamental error as "such error as goes to the foundation of the case, or which takes from the defendant a right essential to his defense." *State v. Evans,* 109 Ariz. 491, 493, 512 P.2d 1225, 1227 (1973), quoting *State v. Pulliam,* 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960). We do not find that the trial court's use of RAJI 1.10 and its failure to specifically instruct that the jury was not obliged to reach any verdict whatsoever was error, let alone fundamental error. The instruction given was for the purpose of advising the jury that in a criminal proceeding a guilty verdict must be unanimous, which served to protect, not deny, the defendant's rights. See *State v. Lockett,* 107 Ariz. 598, 491 P.2d 452 (1971). The judge need not, by instruction, invite a "hung jury." We find no error.

## PAROLE TIME CREDIT

■ At the sentencing hearing, the trial court stated, after imposing a term of life imprisonment without possibility of parole for 25 years, as provided by statute:

"You have served 286 days in custody. Although you are entitled to that time to be credited against the sentence, it will not be credited against your parole time. Twenty-five years runs from this date."

In other words, the defendant's 286 days in custody prior to sentencing were credited by the trial court against the life portion of the term but not against the 25 years for parole eligibility.

Defendant argues that such treatment in effect denies him credit for his pre-sentence incarceration and amounts to a minimum sentence of 25 years plus the 286 days served. We agree. The language of A.R.S. § 13–709(B) is that time served "shall be credited." This, we believe, requires crediting time served against the minimum 25 year portion of the sentence of life imprisonment in the same manner as against any other determinate period of imprisonment.

The judgment of conviction is affirmed, and the defendant is allowed a credit of 286 days on the sentence pursuant to this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.