207 P.3d 779

**In re the Matter of the JURY SELECTION PROCESS IN MARICOPA COUNTY.**

No. 1 CA–CV 08–0028.

Court of Appeals of Arizona, Division 1, Department A.

March 26, 2009.

Scott Ambrose Law Firm, PC By Scott A. Ambrose, Scottsdale, Attorneys for Petitioners–Appellants.

Richard W. Shapiro PLC By Richard W. Shapiro, Phoenix, Co–Counsel for Respondents/Appellees.

Jones Skelton & Hochuli, PLC By Eileen Dennis GilBride, Taylor C. Young, Phoenix, Co–Counsel for Respondents–Appellees.

## OPINION

BARKER, Judge.

¶ 1 This matter presents a highly unusual procedural posture. What we have before us is a matter styled "In Re the Matter of the Jury Selection Process in Maricopa County" and assigned a cause number in the superior court of CV 2006–012150. There is, however, no complaint; there is no answer to a complaint.

## I.

¶ 2 By way of a brief background, this matter arises out of Maricopa County Superior Court's system for the selection of jurors. In 2002 then-Presiding Judge Colin Campbell implemented a jury selection procedure that "regionalized" the jury selection process rather than having it be county wide. The system was called the Proximity Weighted Summoning ("PWS") system. The PWS system was apparently implemented without notice to the bar or the public. Thus, the record we have shows it was not until 2006 that attorneys and parties in Maricopa County became aware of the change in jury selection procedure and began to file objections.

¶ 3 On April 28, 2006, Presiding Judge Barbara Rodriguez Mundell issued the following order in three cases:

The Superior Court in Maricopa County is in receipt of motions (pre-trial and post trial) in the above-referenced cases which have the same underlying issue:

Is Maricopa County randomly selecting jurors' names from its master jury list, as is required under A.R.S. §§ 21–312 & 313?

This issue involves a procedure implemented by the Superior Court of Arizona in Maricopa County in 2002, and therefore presents an ethical issue, which at the very least gives the appearance of impropriety if a Maricopa County Superior Court Judge were to decide this matter;

THEREFORE, IT IS ORDERED that in the above-mentioned cases, this issue only be combined and adjudicated by Honorable William J. O'Neil, Judge of Pinal County Superior Court. All other matters will be decided by the respective trial Judges.

(Emphasis omitted.)

¶ 4 There were thirty-seven cause numbers identified in the caption of the minute entry for newly formed "CV 2006–012150." Eleven of the cause numbers were criminal matters, one probate, and the remainder civil. At an August 9, 2006 status conference over which Judge O'Neil presided, the court ordered as follows:

The Court determines that those parties objecting to the regionalized selection process, regardless of the original party designation, are deemed to be Petitioners. Further, those who believe the regionalized approach is legal are deemed to be the Respondents. Future pleadings will be filed under a separate cause number. The Clerk of the Court is directed to get an actual separate civil cause number. The caption will be: "In Re the Matter of the Jury Selection Process in Maricopa County." The new case number is CV2006–012150.

¶ 5 Judge O'Neil subsequently entered a ruling on October 25, 2007, determining that the PWS system did not violate the statutory scheme. The parties that had been designated petitioners by the court appealed that

ruling. That is the issue before us: whether the trial court was correct in finding that the PWS system is "random" as required by Arizona Revised Statutes ("A.R.S.") sections 21-312 [1] and 21-313.[2]

## II.

¶ 6 There is a significant procedural hurdle to our consideration of this issue. Neither party cites us to any authority for our jurisdiction over this case. We have an independent duty to examine our jurisdiction. *Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 304, 812 P.2d 1119, 1122 (App.1991) ("This court has the duty to review its jurisdiction and, if jurisdiction is lacking, to dismiss the appeal."); *see also Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981) ("Even though the parties do not raise the issue, the appellate court must determine that it has jurisdiction."). This case does not represent either a part of a claim, or a separate claim, filed by any party. What it represents is a single issue that was raised in at least thirty-seven different matters in the superior court and that was ruled on by a single out-of-county judge for apparent ethical reasons.

¶ 7 We do not have directly before us whether the procedure that the superior court sua sponte implemented is a proper one. It is obviously a well-intentioned effort in judicial economy. Thus, we set aside for the moment the issue of whether we can have appellate jurisdiction for an "action," administratively created by the superior court, for which there is no complaint, no petition, no filing fees, and no answer. We focus on a more direct inquiry of whether there would be jurisdiction for this ruling had this ruling been appealed in one of the individual matters that was consolidated and for which there is a proper action pending.

¶ 8 Certainly, there would be jurisdiction for the ruling at issue to the extent it was incorporated by the judge assigned to the individual case and the matter was completed. *See* A.R.S. § 12-2101 (2003); *Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277, 284, 848 P.2d 856, 863 (App.1992) (asserting that an appellate court "can review other 'intermediate orders involving the merits of the action and necessarily affecting the judgment, and all orders and rulings assigned as error' " when it has jurisdiction over an appeal from a final judgment (quoting A.R.S. § 12-2102(A))). That, however, is not the record before us. We do not have a

---

1. As it pertains to these matters, A.R.S. § 21-312 provided as follows:

   A. The jury commissioner or the jury commissioner's agent shall conduct the drawing by randomly selecting names of prospective jurors from the master jury list. The jury commissioner or the jury commissioner's agent shall publicly draw from the master jury list the number of names designated in the order.
   B. The names of prospective jurors drawn from the master jury list shall be designated the master jury file.
   A.R.S. § 21-312 (2002). The Arizona Legislature repealed this statute effective from and after December 31, 2007. 2007 Ariz. Sess. Laws, ch. 199, § 13 (1st Reg.Sess.).

2. Also, at the pertinent time, A.R.S. § 21-313 provided as follows:

   In any county where data processing equipment is used the jury commissioner or the jury commissioner's agent shall cause the device to be programmed to ensure the random selection of names on the master jury list.
   A.R.S. § 21-313 (2002). This statute was amended effective from and after December 31, 2007. 2007 Ariz. Sess. Laws, ch. 199, § 15 (1st Reg.Sess.). This statute now reads as follows:

A. A jury management automation system may be used in the performance of the duties imposed by this title.
B. In any county where a jury management automation system is used, the jury commissioner or jury manager shall cause the device to be programmed to ensure random selection procedures.
C. The courts shall use random selection procedures throughout the juror selection process including:
1. Selecting persons to be qualified or summoned for jury service.
2. Assigning jurors to panels.
3. Calling jurors for voir dire.
A.R.S. § 21-313 (Supp.2008).
   Since the inception of this matter, the legislature has modified the procedural scheme to permit "alternative procedures." A.R.S. § 21-302(D) (Supp.2008). That section provides in full as follows:
D. A court may use alternative procedures for summoning jurors that are in compliance with the constitutions of the United States and this state by providing for the summoning of jurors from a fair cross section of the community as provided in a plan approved pursuant to rules adopted by the supreme court.
*Id.*

final judgment with regard to any completed matter. All we have is one issue, drawn from thirty-seven cases, the resolution of which was presumably incorporated by the judges in those individual matters. Neither do we have a declaratory action filed by any party. *See* A.R.S. §§ 12–1831 to –1846 (2003 and Supp.2008); *Elkins v. Vana*, 25 Ariz. App. 122, 126, 541 P.2d 585, 589 (1975) ("An action for a declaratory judgment is intended to serve as an instrument of preventive justice, to relieve litigants of the common law rule that no declaration of right may be judicially adjudged until that right has been violated, and to permit adjudication of rights or status without the necessity of a prior breach.").

■ ¶ 9 We likewise do not have language pursuant to Arizona Rule of Civil Procedure 54(b), "direct[ing] the entry of final judgment as to one or more but fewer than all of the claims." Even if there were such language, however, it would be subject to the requirement that Rule 54(b) applies only when there is final resolution of any one claim. *See Davis*, 168 Ariz. at 304, 812 P.2d at 1123 ("A trial court's 54(b) certification does not give this court jurisdiction to decide an appeal if the judgment in fact is not final, i.e., did not dispose of at least one separate claim of a multi-claim action."); *see also Musa*, 130 Ariz. at 313, 636 P.2d at 91 (same); *Sisemore v. Farmers Ins. Co. of Ariz.*, 161 Ariz. 564, 565, 779 P.2d 1303, 1304 (App.1989) (same). As our supreme court stated in *Musa*:

> The trial court in the instant case made a Rule 54(b) determination of no just reason for delay and directed the entry of judgment. But this does not confer jurisdiction if the judgment did not in fact dispose of "one or more" of the claims. *Where, as*

here, the judgment disposed of three of the legal theories supporting appellants' claim for relief, Rule 54(b) language does not make the judgment final and appealable.

130 Ariz. at 313, 636 P.2d at 91 (emphasis added). Here, at the very most, the ruling issued by Judge O'Neil only disposed of one legal theory by which those contesting the jury selection procedure sought relief. It is not an issue which, if certified pursuant to Rule 54(b) in an individual case, would confer jurisdiction upon this court. If we have no appellate jurisdiction when the issue is presented in a single case, we are hard-pressed to hold that consolidating the issue and multiplying it thirty-seven times creates jurisdiction—even if such a consolidation is a judicially efficient method of treating the common issue.[3] Thus, there is no appellate jurisdiction.

### III.

■■ ¶ 10 We recognize that we have the ability to take special action jurisdiction when we do not have appellate jurisdiction. *State ex rel. Dep't of Econ. Sec. v. Powers*, 184 Ariz. 235, 236, 908 P.2d 49, 50 (App.1995) ("We have authority ... to ignore defects of form and treat an appeal as a special action."). For a number of reasons, we think that would be inappropriate here.

■ ¶ 11 First, as noted above, by taking some form of jurisdiction we would be circumventing applicable rules as to the creation of and payment for (if applicable) a civil, probate, or criminal action. *See, e.g.,* Ariz. R. Civ. P. 2 ("There shall be one form of action to be known as 'civil action.' "); Ariz. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the

3. In *Arpaio v. Baca*, 217 Ariz. 570, 177 P.3d 312 (App.2008), we accepted special action jurisdiction as to a ruling from the superior court that followed a joint hearing regarding common issues in selected criminal cases. *Id.* at 572, ¶¶ 2-3, 177 P.3d at 314. The common issue drawn from the cases was whether a visitation schedule implemented by the sheriff's office violated the individual defendant's right to counsel. *Id.* at ¶ 4, 177 P.3d 312. We held that the presiding criminal court judge had "inherent authority to schedule a consolidated hearing for the limited purpose of receiving evidence and ruling on the privileged visitation issue." *Id.* at 576, ¶ 19, 177 P.3d at 318. We agree that the superior court has such authority. This matter, however, is different. Appellate jurisdiction was not at issue in *Baca*. What we hold here is that there is no appellate jurisdiction with regard to such a consolidated issue when (1) the superior court attempts to create a separate action, not just consolidate a common issue from various cases under a previously existing cause of action, and (2) the common issue does not qualify under Rule 54(B). Additionally, for the reasons set forth in Section III, *infra*, this matter, unlike *Baca*, is inappropriate for special action jurisdiction.

court."); Ariz. R.Crim. P. 2.2 ("Felony actions may be commenced: (a) By indictment, which may or may not be preceded by a complaint; or (b) By the filing of a complaint before a magistrate in a limited jurisdiction court, or in a court of record with permission of the judge of such court."). In this "action," there is simply a consolidated issue that was given a cause number by order of the superior court and then appealed for review. This is more akin to a certification process where our statutes and court rules permit the federal court to ask the state supreme court to decide a particular issue. *See* A.R.S. § 12–1861 ("The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or a tribal court when requested by the certified court" if the specified conditions in the statute are met); Ariz. R. Sup.Ct. 27 (setting forth the procedure for "certification of questions of law from federal and tribal courts"). We have no such corollary procedure by which the superior court can create a separate action to allow the parties to ask the appellate court to resolve a particular issue even though that issue may apply to a number of cases. By accepting special action jurisdiction, we would be authorizing the creation of an "action," without filing fees or other requirements, that our rules do not expressly permit. We are hesitant to engage in an "ad hoc" amendment to the rules of civil procedure. *See Nielson v. Patterson,* 204 Ariz. 530, 531, ¶ 5, 65 P.3d 911, 912 (2003) (interpreting the rules of procedure in the same manner as statutes); *State ex rel. Morrison v. Anway,* 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) ("It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions.... A departure from this rule is to alter the statute and legislate, and not to interpret.").

¶ 12 Second, and critically, if we accepted special action jurisdiction, the only issue presented is whether the system breached the statutory requirement to be random, not whether there is any basis for relief even if the PWS system in the abstract did violate this requirement. In particular, the manner in which the issue was framed by the superior court in its consolidated order does not allow us to consider whether, assuming error, there is any prejudice in an individual case, particularly in the face of an asserted lack of any constitutional violation in the jury selection procedure. For instance, and as only one example, our supreme court recently addressed the issue of whether a defendant's absence during a jury commissioner's prescreening of prospective jurors resulted in error. *State v. Morris,* 215 Ariz. 324, 333–35, ¶¶ 37–45, 160 P.3d 203, 212–14 (2007). In that case, "[d]efense counsel admitted that he could not identify any group excluded from service or show that the jury did not represent a cross-section of the community." *Id.* at 334, ¶ 39, 160 P.3d at 213. As such, our supreme court denied relief because Morris "neither identified a distinctive group that was excluded from his jury panel nor claimed that the jury he received was not fair and impartial." *Id.* at ¶ 41, 160 P.3d 203. The court further noted that "[e]ven if [the defendant] could show that certain prospective jurors were wrongly excused, we would not reverse his convictions unless he could also show actual prejudice, i.e., that the jurors who actually served were not fair and impartial." *Id.* at 334–35, ¶ 43, 160 P.3d at 213–14.

¶ 13 Without making sweeping generalizations as to when prejudice is required in a jury selection setting and when it is not, we note that a number of other cases point out the importance of a showing of prejudice when errors are claimed with regard to the jury selection procedure. *See State v. Thomas,* 133 Ariz. 533, 537, 652 P.2d 1380, 1384 (1982) (in the context of Arizona Rule of Criminal Procedure 18.4(c), the court held that "unless the record affirmatively shows that defendant was not tried by a fair and impartial jury, then there is no error"); *State v. Webb,* 101 Ariz. 307, 309, 419 P.2d 91, 93 (1966) (stating the general rule that "a conviction will not be reversed for error in the selection of a petit jury unless the defendant shows actual prejudice" and holding that it applies to alleged "defects in grand jury impanelment"); *State v. Miller,* 135 Ariz. 8, 12, 658 P.2d 808, 812 (App.1982) (determining that the failure to include licensed drivers in

the jury selection process was not prejudicial); *State v. Fendler*, 127 Ariz. 464, 470–71, 622 P.2d 23, 29–30 (App.1980) (holding that alleged errors in excusals by a jury commissioner "would be confronted by the rule that a conviction will not be reversed for error in the selection of the grand jury unless the defendant is able to show actual prejudice"). We think it would be unwise for us to accept special action jurisdiction without having the ability to consider all aspects of the issue before us, specifically including prejudice. The present record does not permit us to do so.

## IV.

¶ 14 For the reasons set forth above, we lack appellate jurisdiction with regard to this matter and decline to exercise special action jurisdiction. Our holding is without prejudice to any party seeking relief from Judge O'Neil's ruling in the individual matter in which the ruling was relied upon.

CONCURRING: MICHAEL J. BROWN, Presiding Judge, and JOHN C. GEMMILL, Judge.