NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

IAN SCOTT PARKER, *Appellant.*

No. 1 CA-CR 15-0510
FILED 7-21-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-458979-001
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By W. Scott Simon
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By John Champagne, Tennie B. Martin
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.

_____

**D O W N I E,** Judge:

**¶1** Ian Scott Parker appeals his conviction and sentence for possession or use of dangerous drugs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** Police officers searched Parker and his backpack after they arrested him for shoplifting at a JC Penney store, discovering a bag of methamphetamine in his pocket and a methamphetamine pipe in the backpack. Parker was indicted for possession or use of methamphetamine, a dangerous drug, and possession of drug paraphernalia.

**¶3** A jury acquitted Parker of the drug paraphernalia charge but found him guilty of possession or use of methamphetamine. Parker was sentenced to eight years in prison. He timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I. Suppression Motion

**¶4** Parker contends the trial court erroneously denied his suppression motion, arguing the State did not establish the pipe's lawful seizure.[1] We review a ruling on a suppression motion for an abuse of

_____

[1] Although Parker was acquitted of the drug paraphernalia charge, we address the suppression issue because the State relied on the paraphernalia to buttress the drug possession charge at trial, arguing:

> The pipe was in the pocket of the bag that Mr. Parker had.
> The methamphetamine was found in the pocket of the

discretion, considering the facts presented at the suppression hearing in the light most favorable to sustaining the ruling. *State v. Wilson*, 237 Ariz. 296, 298, ¶ 7 (2015). We give deference to the trial court's factual findings, but review *de novo* whether a Fourth Amendment violation occurred. *See State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118 (1996).

**¶5**      Parker's motion sought to suppress "all evidence gathered from his pockets." It did not challenge the search of the backpack. At the evidentiary hearing, both the prosecutor and defense counsel confined their questioning of the testifying officer to the search of Parker's person.

**¶6**      A defendant who files a motion to suppress has the burden of producing "sufficient preliminary evidence" before the State is required to proceed with its evidence. *State v. Hyde*, 186 Ariz. 252, 266 (1996); *see also* Ariz. R. Crim. P. 16.2(b) ("[T]he prosecutor's burden of proof shall arise only after the defendant has come forward with evidence of specific circumstances which establish a prima facie case that the evidence taken should be suppressed."). Issues concerning the suppression of evidence that are not properly raised in the trial court are waived on appeal. *State v. Tison*, 129 Ariz. 526, 535 (1981) (refusing to consider grounds for suppression not raised at suppression hearing).

**¶7**      Because the suppression motion challenged only the search of Parker's person — a search not challenged on appeal — we affirm the denial of the suppression motion.[2]

## II.      Use of Restraints

**¶8**      Parker next contends the trial court failed to make specific findings before allowing him to be restrained at trial and by limiting him to use of a small pencil. He filed a pretrial notice objecting to any restraints, "to include: stun belt and/or vest; leg brace; shackles; and unusually sized writing utensils," specifically "a markedly short pencil,

---

sweatpants Mr. Parker was wearing . . . It's the same thing as if -- one and two go together.

[2]      Waiver aside, the suppression hearing evidence established that no search occurred — of either Parker or the backpack — until after Parker had been arrested for shoplifting. A police officer may conduct a warrantless search of an arrestee incident to arrest, *United States v. Robinson*, 414 U.S. 218, 235 (1973), as well as areas or items within the arrestee's immediate control. *Chimel v. California*, 395 U.S. 752, 763 (1969).

reserved for the miniature golf course[.]" The court overruled the objection, reasoning that the sheriff's office had developed restraint policies over the years to ensure the safety of all trial participants.

¶9          A trial court abuses its discretion by allowing visible restraints at trial without making a particularized inquiry into their necessity. *Deck v. Missouri*, 544 U.S. 622, 629 (2005); *State v. Gomez*, 211 Ariz. 494, 502–03, ¶¶ 40–41 (2005). We agree with Parker that the trial court failed to make an independent inquiry and issue findings regarding the use of restraints at trial. Any error in this regard is harmless, though, because nothing in the record suggests Parker was restrained in a manner visible to the jury or that restraints impaired his ability to consult with counsel or present his defense. *See State v. Dixon*, 226 Ariz. 545, 552, ¶¶ 29–30 (2011) (noting lack of evidence jurors saw brace or stun belt defendant was required to wear at trial).

¶10          Requiring a defendant to use a particular writing implement is not a "restraint" within the meaning of *Deck*. Moreover, Parker has not established that jurors observed the shorter pencil, much less that they inferred he was using it because he was considered dangerous. Nor does the record suggest Parker's presentation of his defense was hampered in any way by use of the pencil.

## III.    Dismissal of Juror

¶11          Parker next contends the trial court erred by dismissing Juror 23 for cause. That prospective juror responded to a question about cases involving possession of drugs and drug paraphernalia by stating, "I am a recovered drug addict. So I had a history of all that stuff. And I do not believe that I could be fair." She later advised that she did not believe she could judge the credibility of each witness by the same standard because she was biased "towards drug addicts." She also stated her ability to be fair might be affected because she had "two misdemeanors for shoplifting and one for trafficking in stolen property." Outside the presence of other prospective jurors, Juror 23 explained: "I just think I'm bias[ed] in favor of drug addicts in general," and confirmed she would be "[l]ike way sympathetic . . . [b]ecause I used to be like that." In terms of evaluating each witness's testimony by the same standard, she stated: "Again, that's where I would be more in favor of the defendant." She also advised, though, that she did not think she would believe the defendant more than other witnesses. Finally, she agreed that if there was "just testimony about drugs in general" and no evidence that "the person is or is not a drug addict," she would be able to be fair and impartial.

¶12        The court struck Juror 23 for cause over Parker's objection. We review that decision for an abuse of discretion. *See State v. Medina*, 193 Ariz. 504, 511, ¶ 18 (1999).

¶13        "When there is reasonable ground to believe that a juror cannot render a fair and impartial verdict, the court, on its own initiative, or on motion of any party, shall excuse the juror from service in the case." Ariz. R. Crim. P. 18.4(b).  The trial court is in the best position "to assess whether prospective jurors should be allowed to sit," *State v. Blackman*, 201 Ariz. 527, 533, ¶ 13 (App. 2002), because "the trial judge has the opportunity to observe the juror's demeanor and the tenor of his or her answers first hand."  *State v. Cook*, 170 Ariz. 40, 54 (1991).  "[E]ven if a juror is sincere in his promises to uphold the law, a judge may still reasonably find a juror's equivocation about whether he would take his personal biases in[to] the jury room sufficient to substantially impair his duties as a juror, allowing a strike for cause."  *State v. Ellison*, 213 Ariz. 116, 137, ¶ 89 (2006).

¶14        Given the totality of Juror 23's statements, we find no abuse of discretion.  Moreover, even if the juror should not have been excused, we would not reverse Parker's conviction "unless the record affirmatively shows that defendant was not tried by a fair and impartial jury."  *State v. Thomas*, 133 Ariz. 533, 537 (1982); *State v. Walden*, 183 Ariz. 595, 609 (1995) (error in striking juror for cause does not require reversal absent showing that a fair and impartial jury was not secured), *disapproved on other grounds by State v. Ives*, 187 Ariz. 102, 108 (1996).  A defendant is not entitled to a particular jury, but only a fair one.  *State v. Arnett*, 119 Ariz. 38, 50 (1978).

## IV.    *Batson* Challenge

¶15        Parker argues the court erroneously rejected his *Batson* challenge to four prospective jurors.  The Equal Protection Clause of the Fourteenth Amendment prohibits peremptory strikes based on race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).  A *Batson* challenge involves three steps:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008).

**¶16**        Defense counsel challenged the peremptory strikes of Jurors 33, 2, 13, and 24, arguing that "[f]our of the State's six strikes were for minority jurors." The prosecutor responded that Juror 24 "identif[ied] himself as white" and advised that his comments about being charged with a DUI prompted the strike. The prosecutor explained that she struck Juror 2 because of a prior DUI, his experience of being assaulted, and because he "believed that some drugs should be legalized." She said Juror 13 "thought some drugs should be decriminalized. . . . Also his son was involved in a previous possession of marijuana and possession of drug paraphernalia." The prosecutor noted that Juror 33 was currently a judge and failed to "give any further information in regards to what her previous employment was." The prosecutor also emphasized that four members of a minority group remained on the jury panel. The trial court denied the *Batson* challenge, finding that "the State has been able to offer a non racial reason for each of those strikes."

**¶17**        We review rulings regarding the motive for a peremptory strike for clear error. *State v. Murray*, 184 Ariz. 9, 24 (1995). "We give great deference to the trial court's ruling, based, as it is, largely upon an assessment of the prosecutor's credibility." *State v. Roque*, 213 Ariz. 193, 203, ¶ 12 (2006).

**¶18**        We find no abuse of discretion. The defendant bears the burden of proving purposeful discrimination. *Roque*, 213 Ariz. at 204, ¶ 15. Parker did not carry his burden. He did not argue that the State's race-neutral reasons were a pretext for purposeful discrimination. Moreover, as the prosecutor noted, four members of a minority group remained on the jury panel after peremptory strikes. "Although not dispositive, the fact that the state accepted other minority jurors on the venire is indicative of a nondiscriminatory motive." *Id.*

## V.    Continuance Request

**¶19**        Finally, Parker argues the court erred in denying his continuance request based on statements an individual made to his counsel shortly before trial, indicating she placed the drugs and pipe in Parker's backpack. In making the oral continuance request, defense counsel stated she "would like more time to review the statements" because the defense to date was "not based on her statements that she had the drugs and that she placed the drugs in Mr. Parker's backpack." The court noted that defense counsel had known of this witness for a long time and denied the continuance.

¶20 A trial court must grant a continuance "only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." Ariz. R. Crim. P. 8.5(b). A motion for continuance "must be in writing and state with specificity the reason(s) justifying the continuance." Ariz. R. Crim. P. 8.5(a). We review the denial of a continuance request for an abuse of discretion, "which we will find only if the defendant demonstrates prejudice." *State v. Forde*, 233 Ariz. 543, 555, ¶ 18 (2014).

¶21 We find no error. As a threshold matter, Parker did not file a written motion, as required by Rule 8.5(a). He also failed to establish the existence of "extraordinary circumstances" or prejudice arising from the court's ruling. As the trial court noted, Parker knew about the witness. Moreover, the witness ultimately invoked her Fifth Amendment right not to incriminate herself, and the court precluded her testimony and found her to be an unavailable witness. After extensive argument, the court denied Parker's motion to admit her prior statements at trial as statements against penal interest under Arizona Rule of Evidence 804(b)(3), finding "there's just nothing to corroborate or indicate trustworthiness of anything she said." Moreover, Parker was acquitted of possessing the drug paraphernalia found in the backpack, and the record does not suggest the witness would have testified that she placed the methamphetamine in Parker's pants pocket. Under these circumstances, the trial court did not abuse its discretion in denying the last-minute continuance request.

**CONCLUSION**

¶22 For the foregoing reasons, we affirm Parker's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: AA

7