NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DAVID RICHARD SCHALK, *Appellant*.

No. 1 CA-CR 24-0145

FILED 01-30-2025

Appeal from the Superior Court in La Paz County
No. S1500CR202200105
The Honorable Marcus A. Kelley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**P A T O N**, Judge:

¶1        David Schalk appeals from his convictions and sentences for kidnapping and aggravated assault. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the verdicts. *State v. Mendoza*, 248 Ariz. 6, 11, n.1 (App. 2019). In June 2022, Schalk and his wife ("Wife") hired Adam[1] to install an awning on their trailer. Adam began the project but never completed it. Schalk and Wife became frustrated that the project was not done, and Adam became frustrated that he had not been fully paid. In July, Adam texted Wife demanding $1,000 or he would tell Schalk's employer that he saw Schalk smoking marijuana in his employer's vehicle, which violated company policy. That same day, Schalk and Wife drove to Adam's house and said they were there to take him to the bank to pay him the remainder of the money owed.

¶3        According to Adam, Schalk and Wife abducted him at gunpoint, and drove him out to the desert where he was beaten "within an inch of [his] life." Wife later drove Adam home, at which time his friend called 911 after seeing his injuries. Adam was airlifted to a Phoenix hospital for medical treatment.

¶4        The State charged Schalk with one count of kidnapping, a class 2 dangerous felony, one count of aggravated assault, a class 4 dangerous felony, one count of aggravated assault, a class 6 felony, and one

---

[1] We use a pseudonym to protect the victim's privacy. *See* Ariz. R. Sup. Ct. 111(i).

2

count of aggravated assault, a class 3 dangerous felony.[2]  Although Schalk and Wife were tried together, Wife is not a party to this appeal.

¶5          Schalk's trial began in January 2024.  Adam, his friend who called 911, and a police officer who collected Schalk's DNA, testified on the first day of trial.  At the beginning of the second day of trial, Juror #2 gave the court the following note:

> To: Judge Marcus Kelley
> From: Juror #2
>
> I am regretfully informing you that I cannot continue as a juror in this case because I find myself unalterably prejudiced towards the plaintiff in this case. From what I observed of him and his testimony yesterday I believe him to be a confidence man and charlatan and grifter. There is absolutely no way that I can take what he says with any honesty. As such, my continued participation in this trial would not serve any constructive purpose and would only be detrimental to the proceedings as I cannot remain unbiased in regard to him.

Based on the previous day's witnesses, the court understood the letter to refer to Adam in a negative way, which was not disputed by the State or defendants.

¶6          The court and parties agreed Juror #2 should be questioned about whether he shared his views with other jurors.  The court questioned Juror #2:

> THE COURT: The primary question is, did you communicate this to any of the other jurors at all?
>
> JUROR NUMBER 2: No, your Honor.
>
> THE COURT: Okay. So there's no way that your thoughts could taint the rest of the people in there?

---

[2] The State also charged Schalk with one count of attempted first-degree murder, a class 2 dangerous felony, but the court granted the State's motion to dismiss this count before trial.

JUROR NUMBER 2: No. I did not even speak to any of them about anything.

THE COURT: Okay. All right. Now, I'm going to ask you one question. And you know, when we gave you the preliminary instructions, you were instructed to keep an open mind until you heard all of the evidence. But despite that instruction, you still feel the way the letter reflects?

JUROR NUMBER 2: Yes, your Honor.

THE COURT: Okay. I have no further questions.

The court excused Juror #2 over Schalk's objection.

¶7        The jury convicted Schalk on all four counts. The court sentenced Schalk to concurrent sentences, the longest being seven and a half years' imprisonment, with 32 days of presentence incarceration credit.

¶8        Schalk timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**DISCUSSION**

¶9        Schalk argues the superior court abused its discretion by excusing Juror #2 because Juror #2's opinions were "properly formed," he did not share them with other jurors, and the court did not thoroughly question the juror before excusing him. Schalk also contends that excusing Juror #2 displaced the independent judgment of the jury and amounted to structural error. The State responds that the court acted within its discretion in excusing Juror #2 because he expressed both in writing and verbally that he could not be fair and impartial.

¶10        We review a superior court's decision to excuse a juror for cause for an abuse of discretion. *State v. Naranjo*, 234 Ariz. 233, 239, ¶ 12 (2014). A criminal defendant has a constitutional right to a fair and impartial jury. *See* Ariz. Const. art. 2, § 24; *see also* U.S. Const. amend. VI. But a defendant "is not entitled to a particular jury, but only a fair one . . . and unless the record affirmatively shows that defendant was not tried by a fair and impartial jury, then there is no error." *State v. Thomas*, 133 Ariz. 533, 537 (1982).

¶11  The Arizona Rules of Criminal Procedure require "[t]he court, on motion or on its own," to "excuse a prospective juror or jurors from service in the case if there is a reasonable ground to believe that the juror or jurors cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). This can occur at any time during trial proceedings. *Id.* "[T]he court should remove for cause any juror who expresses serious misgivings about the ability to be fair and impartial." *State v. Blackman*, 201 Ariz. 527, 533, ¶ 12 (App. 2002). A juror may serve if he "is willing to put aside his opinions and base his decision solely upon the evidence." *State v. Johnson*, 247 Ariz. 166, 198, ¶ 113 (2019) (citation omitted). Whether a juror can render a fair and impartial verdict is a decision for the superior court. *See State v. Lavers*, 168 Ariz. 376, 390 (1991). We defer to the superior court on jury selection and service issues—including assessing a juror's demeanor when questioned—because the court is "in the best position to 'assess the demeanor of the [jury panel], and of the individuals who compose it.'" *Naranjo*, 234 Ariz. at 239, ¶ 12 (citation omitted).

¶12  Here, Juror #2 contacted the court to say he was "unalterably prejudiced[]" regarding Adam, the victim in this case, before Adam's testimony had concluded. The juror stated that his "continued participation in this trial would not serve any constructive purpose and would only be detrimental to the proceedings as [he] cannot remain unbiased." The court asked Juror #2 if he felt this way despite previously being instructed to keep an open mind until all evidence was presented. The juror responded that he did. It was therefore not error for the court to view Juror #2's words and actions as expressing something beyond "serious misgivings about the ability to be fair and impartial"—when, in fact, the juror's statements were unequivocal—and excuse him. *See Blackman*, 201 Ariz. at 533, ¶ 12; *see also Naranjo*, 234 Ariz. at 240, ¶ 17.

¶13  Schalk asserts that Juror #2 should not have been excused because he stated he could be fair and impartial during voir dire. When Juror #2 was asked about listening to witness testimony during voir dire, Juror #2 responded he "would give the same weight to you know, anyone" and "listen with an unbiased ear." Indeed, prior to trial, all of the jurors affirmed they would "give careful attention to the proceedings, follow the Court's instructions . . . and render a verdict in accordance with the law and evidence presented." But Juror #2 acknowledged this admonition and made the statements Schalk points to *before* he sent the letter to the court stating he was "unalterably prejudiced" and could not remain unbiased regarding Adam.

¶14        Schalk further contends the superior court did not conduct a "thorough oral examination" before excusing Juror #2 for cause, apparently referring to Arizona Rule of Criminal Procedure 18.5(f) ("The court must conduct a thorough oral examination of the prospective jurors . . ."). "To succeed on a claim that the court failed to adequately question the jury panel," Schalk "must demonstrate not only that the voir dire examination was inadequate, but also that, as a result of the inadequate questioning, the jury selected was not fair, unbiased, and impartial." *State v. Moody*, 208 Ariz. 424, 451, ¶ 95 (2004). He has not met this burden.

¶15        Schalk also argues Juror #2's letter was merely a credibility opinion properly formed as part of his duties as a juror. Certainly, "the credibility of witnesses is a matter for the jury." *State v. Canez*, 202 Ariz. 133, 149, ¶ 39 (2002). But Juror #2's statements in the letter—and verbal affirmation he could not keep an open mind—were more than a mere credibility determination about Adam. Juror #2, along with the rest of the jury, had been instructed not to "form final opinions about any fact or about the outcome of the case until you have heard and considered all of the evidence[,]" to "[k]eep an open mind during the trial," and "form your final opinions only after you have had an opportunity to discuss the case with each other and in the jury room at the end of trial." Juror #2's letter and verbal response indicated he had not followed these instructions, and had formed an opinion and could not keep an open mind before hearing all the evidence—or even all of Adam's testimony.

¶16        Schalk next argues that the superior court impermissibly displaced the independent judgment of the jury and influenced the verdict by excusing Juror #2. "In determining whether a [superior] court has coerced the jury's verdict, this court views the actions of the judge and the comments made to the jury based on the totality of the circumstances and attempts to determine if the independent judgment of the jury was displaced." *State v. Huerstel*, 206 Ariz. 93, 97, ¶5 (2003). Whether conduct amounts to coercion is dependent upon the particular facts of each case. *State v. Fernandez*, 216 Ariz. 545, 548, ¶ 8 (App. 2007). Circumstances that may add to a finding of coercion include a judge having ex parte communications with a deliberating juror, *see State v. McCrimmon*, 187 Ariz. 169, 173-74 (1996), a judge providing an impasse instruction prematurely, *see Huerstel*, 206 Ariz. at 101, ¶ 25, or a judge persuading a jury foreman to keep deliberating after the foreman expressed that further deliberations would be unproductive, *see State v. Lautzenheiser*, 180 Ariz. 7, 11 (1994).

¶17        None of these circumstances are present here. Schalk complains that the court's action of excusing Juror #2 for the juror's

expressed prejudice coerced the verdict. But Juror #2 told the court he had not shared his views about the case with any other jurors. And given that nothing in the record indicates that the court told the jury why Juror #2 was dismissed, the court's decision to excuse Juror #2 did not displace the jury's independent judgment or influence it.

¶18 Because the court did not err, we do not address Schalk's argument that the court's excusal of Juror #2 amounted to structural error.

**CONCLUSION**

¶19 We affirm.

